[Crim. No. 2443.   Third Dist.   Dec. 11, 1953.]

THE PEOPLE, Respondent, v. DONALD BASS
TROLINDER, Appellant.

Gordon D. Schaber and Lawrence F. Girolami for Appellant.

Edmund G. Brown, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

PAULSEN, J. pro tem.—After trial before a jury, defendant was convicted on two counts of an information charging violations of sections 288a and 288 of the Penal Code. Thereafter he was found not to be a sexual psycopath and an application for probation was denied. He was sentenced for the term prescribed by law on each count, the sentences to run concurrently.

His notice of appeal states that he appeals from the judgments and from an order denying his motion for a new trial. The record discloses that no motion for a new trial was made and the subject has not been referred to in the briefs. The appeal will therefore be considered as one from the judgments only.

As grounds for reversal it is contended that (1) the evidence was insufficient to support the verdicts; (2) it was an abuse of discretion on the part of the trial court to permit the prosecuting witness to testify; and (3) a proper cautionary instruction regarding child witnesses should have been given.

Donna Mae, 7½-year-old daughter of defendant, was the victim of both offenses and her testimony concerning the details of the offenses was not directly corroborated.

It is undisputed that Donna Mae, her brother John, aged 9, and her brother Leslie, aged 5, had been living at the Juvenile Hall in Quincy for about a year prior to July 13, 1952; and that on the afternoon of that day defendant took them to the Clark cabins, one of which was occupied by him as a tenant of Mrs. Clark. There was testimony of apparently disinterested witnesses to the effect that defendant and the children first visited Mrs. Clark at her cabin and later, assisted by the children, defendant moved his belongings from cabin number 5 to cabin number 2.

During the afternoon Donna Mae and her brothers played various games about the cabins, defendant participating with the children in the games. After about two hours devoted to such activities, defendant and Leslie went into the cabin.

Donna Mae testified that for a short time after that she picked flowers and then went into the cabin where she found defendant and Leslie lying on the bed; that defendant called her and helped her onto the bed. Leslie was lying on the side next to the wall, defendant in the middle and Donna Mae on the outside. She further testified as follows:

"Q. What happened next, if anything? A. Daddy jerked me over to the other side.

"Q. Daddy jerked you over to the side of him, is that what you said? A. Yes.

"Q. And what happened next, if anything? A. And I didn't want to go over there.

"Q. You didn't want to go over there? A. No.

"Q. Why not? A. Because.

"Q. You were over here and he jerked you over there, is that right? (Indicating.) A. Yes.

"Q. Did anything else happen? A. Yes.

"Q. What happened, Donna; tell us. A. Daddy jerked my head down towards him and then he made me suck his penis.

"Q. Daddy jerked my head toward him and made me suck his penis, is that what you said? A. Yes.

"Q Did you try to stop him from pulling your head down? A. Yes.

"Q. You did. How did you try to stop him? A. I stopped like that. (Witness illustrates.)

"Q. Did he try to do anything to you at that time on the bed besides putting his penis in your mouth? A. Yes.

"Q. And will you tell us what that was? A. He bit me.

"Q. Where did he bite you? A. On my penis.

"Q. On your penis. Down where you go to the bathroom, you mean? A. Yes.

"Q. Was it right on the place where you go to the bathroom or the leg or where? A. Right where I go to the bathroom."

Donna Mae complained to her older brother immediately after the acts occurred. Later, while defendant was asleep, the children returned to the Juvenile Hall and she complained to the matron.

When Donna Mae was called as a witness the following occurred:

"Q. What is your name, Donna, your full name? Is it Donna Mae? A. Donna Mae.

"Q. And your last name is Trolinder, isn't it? A. Yes.

"Q. T-r-o-l-i-n-d-e-r? A. Yes.

"Q. Where do you live? A. In the Children's Home.

"Q. In the Children's Home in Quincy? A. Yes.

"Q. And do you have any brothers and sisters? A. I have some brothers.

"Q. What are their names? A. Leslie and Johnny.

"Q. How old is Leslie? A. Five.

"Q. How old is Johnny? A. Nine.

"Q. How old are you? A. Seven.

"Q. And when will you be eight? A. November 10.

"Q. Do you go to school, Donna? A. Yes.

"Q. Where do you go to school? A. Pioneer.

"Q. Pioneer. That is in American Valley, is that right? A. Yes.

"Q. And in what grade are you? A. First.

"Q. Are you starting the First Grade this year or have you finished the First Grade? A. I finished.

"Q. What grade will you be in next year? A. Second.

"Q. Do you go to Sunday School? A. Yes.

"Q. How often? A. Every Saturday.

"Q. And at Sunday School are you taught the difference between telling the truth and telling lies? A. Telling the truth.

"Q. You mean you are taught to tell the truth? Are you taught to tell lies? A. No.

"Q. Why? Do you know what happens to people that tell lies? A. (Witness nods head.)

"Q. What happens? A. Get spanked.

"Q. If we ask you some questions here today will you tell us the truth or will you tell us lies? A. Truth.

"MR. JANES: I'll ask that the witness be sworn, Your Honor.

"MR. KEANE: No objection.

"THE COURT: Very well. I doubt if she knows what an oath is but——"

The witness was then sworn and the examination proceeded as follows:

"MR. JANES: Q. Donna, do you realize that you just took an oath to tell the truth? A. Yes.

"Q. Do you know what it means to put your hand up like that and say to tell the truth? A. Yes.

"Q. Does that mean you will tell us only the truth and not tell lies at all? A. Yes."

She then recited many details of family life—of interest only to the extent that they throw light on the question of her competence—and gave the details of the commission of the crimes already set forth herein.

Defendant's first and second contentions are so closely related that they will be considered together.

He does not question the well-established proposition that a child of 7 may be a competent witness but insists that the trial court abused its discretion in permitting her to testify after expressing a doubt of her ability to understand the nature of an oath and that the error in so doing is demonstrated by the unreliable character of her uncorroborated testimony.

In the first instance, the question whether or not a child of that age is competent to be a witness lies within the discretion of the trial judge, and his conclusion as to the question of qualification is final on appeal unless there is an affirmative showing that he has abused his discretion in the matter. (*People* v. *Trippell,* 7 Cal.2d 612 [61 P.2d 929]; *People* v. *Goff,* 100 Cal.App.2d 166 [223 P.2d 27]; and *People* v. *Terry,* 99 Cal.App.2d 579 [222 P.2d 95].)

It is said in *People* v. *Meraviglia,* 73 Cal.App.402, at page 410 [238 P. 794]: "The test of the competency of a child to testify in the trial of a case is that they may possess sufficient intelligence, understanding and ability to receive and fairly accurately recount their impressions; and that they have knowledge of the nature of an oath, and the moral sense to realize they should tell nothing but the truth, and are likely to be punished for telling falsehoods."

It has been held that the *voir dire* examination should be sufficiently broad and extensive to establish these requisites. (*People* v. *Watrous,* 7 Cal.App.2d 7 [45 P.2d 380].)

But whether or not there has been an abuse of discretion is a question to be determined by an examination of all the testimony of the child, especially where it is uncorroborated. (*People* v. *Arcia,* 85 Cal.App.2d 127 [192 P.2d 31].)

Defendant contends that the testimony of the child shows that she had been coached; that it is therefore unworthy of belief and demonstrates the impropriety of permitting her to testify. He points out the fact that she used the

word "penis" when referring to the acts committed by her father and argues that a child of her tender years would not have been familiar with the word and must have been told what to say. He points out further that she remembered the details of the crimes but did not remember that she helped her father move his things from one cabin to the other.

The record discloses that she had discussed the case with the matron and others, but she explained the use of the word by saying she learned it from one of her brothers. Her explanation seems more reasonable in view of the fact that she also used the word in describing her own private parts.

Her recollection of the events of the day, generally, appeared to be excellent. She appeared to be truthful and intelligent and her testimony affords no evidence of her having been coached. A careful examination of the record convinces us that the court did not abuse its discretion in permitting Donna Mae to testify and that the evidence is sufficient to support the verdicts.

It is finally contended that the court should have instructed the jury to view the testimony of the prosecuting witness with caution because a child of her age might not be able to "perceive the facts or relate them accurately."

The court of its own motion gave the following instruction:

"Charges such as those made against the defendant in this case are ones, which, generally speaking, are easily made, and once made, difficult to disprove even if the defendant is innocent. From the nature of a case such as this, the complaining witness and the defendant usually are the only witnesses. Therefore, I charge you that the law requires that you examine the testimony of the prosecuting witness with caution."

Such an instruction should be given in all cases of this kind, and the particular reason mentioned therein should be stated. (*People* v. *Putnam,* 20 Cal.2d 885 [129 P.2d 367]; *People* v. *Lucas,* 16 Cal.2d 178 [105 P.2d 102, 130 A.L.R. 1485].)

In *People* v. *Putnam, supra,* the defendant requested the following instruction: "You are hereby instructed to view with great care and caution the testimony of a child of immature years." The request was refused. In upholding the ruling the Supreme Court said: "There is no general rule that the testimony of children admittedly competent as witnesses is less trustworthy than the testimony of older persons; hence there is ordinarily no occasion for a cautionary instruction on that basis."

In this case the child was competent to testify and the court not only instructed on the rules to be followed in evaluating the testimony of witnesses generally but gave the cautionary instruction already quoted. There was no error in failing to instruct further on that subject.

The judgments are affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied December 18, 1953, and appellant's petition for a hearing by the Supreme Court was denied January 6, 1954.