[Crim. Nos. 5979, 5980. Second Dist., Div. Two. May 13, 1958.]

THE PEOPLE, Respondent, v. GEORGE EDWARD LOIGNON, Appellant.

[Two Cases.]

Samuel C. McMorris, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Ray R. Goldie, Deputy Attorney General, for Respondent.

FOX, P. J.—Defendant was convicted of violating Penal Code, sections 288a[1] and 288[2] and attempted kidnaping. He was sentenced to the penitentiary on each count. All of these offenses were committed on August 17, 1956. A conviction in 1948 of child stealing was alleged and admitted. Defendant was granted probation on that charge, one of the conditions being that he was "not to associate with minors unless in the presence of responsible adults." Upon conviction in the current case defendant's probation was revoked and he was sentenced to the state penitentiary on that charge; the sentence, however, was to run concurrently with those mentioned above. Defendant has appealed from the judgment and sentence in each case.

### APPEAL NUMBER 5980

On the evening of August 17, 1956, Stanley and his mother were at his father's store. At approximately 8 o'clock Stanley was skating back and forth to the corner from the front of the

---

[1]Penal Code, section 288a, provides in part:

"Any person participating in an act of copulating the mouth of one person with the sexual organ of another is punishable by imprisonment. . . ."

[2]Penal Code, section 288, provides in part:

"Any person who shall wilfully and lewdly commit any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony. . . ."

store. Defendant, whose car was parked across the street, engaged Stanley, who was nearly six, in conversation and invited him to go for a ride, which invitation he accepted. Stanley suggested that they go around the block; defendant, however, took him down to the railway tracks near the Stanford School. Defendant thereupon took Stanley's pants down to his ankles and had him lie down on the seat. He then committed an act of copulation on Stanley. Defendant thereafter had Stanley turn over on his stomach. He then put his finger in his ''bottom,'' and also chewed on his ear and spanked his leg. Stanley told defendant that he wanted to go home to his mother. In response defendant said to him several times that he would take him in just a minute, but continued to commit these acts. Defendant finally drove Stanley back to where his car had been parked and let Stanley out. He skated back to his mother who was on the corner looking for him. He was crying and told her what had happened. The boy knew that the car he had been in was a Plymouth. Stanley's mother called the police, who searched defendant's car and found some rocks in the front seat, which appeared to his mother to be the same rocks that had fallen out of Stanley's pockets the night before when she was undressing him and which had been put back into his pockets.

Between 4:30 and 5 o'clock on the afternoon in question, defendant parked his car near Lincoln School in Lynwood. Ricky, seven years of age, was walking back to school. Defendant called Ricky and asked him if he wanted to take a ride. Ricky declined, explaining that it was against the law to ride with strangers and that his mother would not like it. Defendant said, ''Come on and get in the car.'' Ricky replied, ''No, I can't.'' Defendant opened the door and pulled him in. Ricky fought with defendant a little. Defendant told him to quiet down; Ricky did quiet down but got ready to open the door. When defendant started the motor Ricky opened the door, jumped out of the car, and ran. He turned back, however, to look at the license plate and remembered that the number was LKU 707. He also observed that ''part of the license plate frame was hanging over.'' Ricky told the coach at school what had happened, and the coach took him home. His mother wrote down the license number and called the police.

Two other boys saw defendant and Ricky in the car. They took the license number, went back to their home and also called the police.

Ricky saw defendant that night at the Lynwood police station and recognized him as being the man that pulled him into the car.

Defendant's defense was that of an alibi. He attempted to account for his time from approximately 1:45 to 9:30 on the afternoon and evening in question. He did not, however, take the witness stand in his own behalf.

Although the public defender had been appointed to represent the defendant, when his case was called for trial he stated that he no longer desired the services of that office and that he wished to represent himself. He informed the court that he felt that under the circumstances he could present the case better than a lawyer. The court fully explained to him the difficulties of representing himself and earnestly recommended that he not dispense with the services of counsel. The defendant's request, however, was finally granted.

Defendant now contends that the court erred in accepting his waiver of the right to counsel. He asserts that such waiver was "incompetent, contrary to law, and a denial of due process."

The constitutional right to be represented by counsel (Cal. Const., art. I, § 13) is one that may be waived. (*In re Connor*, 16 Cal.2d 701, 709 [108 P.2d 10].) The waiver, however, to be effective must be made "competently, intelligently, and completely." (*In re Jingles*, 27 Cal.2d 496, 498 [165 P.2d 12].) Whether a waiver in a particular case meets this standard is largely a matter for the determination of the trial court, and its decision will not be disturbed on appeal in the absence of an abuse of discretion. (*People* v. *Rogers*, 150 Cal.App.2d 403, 416 [309 P.2d 949].)

In the instant case, defendant had been an accountant. He had had previous experience in the criminal courts. He indicated he had given considerable thought to the idea of discharging his counsel and representing himself and that his decision was a considered one. The trial court fully explained to him the problem and difficulty of acting as his own attorney and admonished him not to dispense with the assistance of the public defender. Defendant, however, persisted in his view that in the circumstances of this case he could present it better than a lawyer. It is thus clear that the trial judge was abundantly justified in accepting defendant's waiver of the right to counsel, and such acceptance was in accordance with the established law and not a denial of due process.

Defendant's second contention is that the court erred in admitting the testimony of incompetent witnesses. Relying on section 1880, Code of Civil Procedure, he argues that the children who testified were not competent witnesses. That section provides that children under 10 years of age cannot be witnesses if they "appear incapable of receiving just impressions of the facts with respect to which they are examined or of relating them truly." That section imposes upon the trial judge a duty to determine whether a child under 10 is a competent witness. If a child possesses sufficient intelligence, understanding and ability to receive and fairly accurately recount his impressions and he has an understanding of the nature of an oath and a moral sensibility to realize that he should tell the truth and that he is likely to be punished for a falsehood, he is competent to testify. (*People* v. *Trolinder*, 121 Cal.App.2d 819, 823 [264 P.2d 601]; *People* v. *Lamb*, 121 Cal.App.2d 838, 846 [264 P.2d 126]; *People* v. *Goff*, 100 Cal.App.2d 166, 170 [223 P.2d 27].) The competency of a child as a witness is a matter resting largely in the sound discretion of the trial judge and, in the absence of a showing of an abuse of discretion, his decision will not be disturbed on appeal. (*People* v. *Ash*, 70 Cal.App.2d 583, 585 [161 P.2d 415]; *People* v. *Ernst*, 121 Cal.App.2d 287, 290 [263 P.2d 114].)

The trial judge conducted a voir dire examination of Stanley and Ricky regarding their church and school attendance, obligation to tell the truth and the consequences of telling an untruth before they were sworn. Stanley told the court that he was 6 years old and was in the first grade; that his Sunday school teacher had taught him what it means to tell the truth, and that if he did not tell the truth he might be punished. Ricky stated that he was 7½ years old, in the second grade, and that he realized he might be punished if he told a lie. In the circumstances, the trial court properly exercised its discretion in permitting these children to testify. (*People* v. *Norred*, 110 Cal.App.2d 492, 495 [243 P.2d 126].)

Furthermore, the trial court inquired of the defendant in each instance whether he was "satisfied with the qualifications of the witnesses" and defendant indicated that he was.

Defendant's third contention is that the language of section 288 of the Penal Code is "too vague, indefinite and uncertain to constitute valid criminal legislation." He argues that the words "lewdly," "lewd" and "lascivious" in the section (see text of section in footnote 2) render it too vague

to meet the requirements of due process. The section was held constitutional, however, more than 30 years ago in *People* v. *Maine*, 93 Cal.App. 141 [269 P. 194]. The section "was enacted to protect children from the lustful advances and tamperings of callous and unscrupulous persons as well as from the assaults of depraved unfortunates." (*People* v. *Hobbs*, 109 Cal.App.2d 189, 192 [240 P.2d 411].) A similar attack was made on section 702 of the Welfare and Institutions Code on the ground that the words "dissolute" and "immoral" contained in the statute were not sufficiently definite to inform those subject to its sanctions what type of conduct was thereby denounced. This court, in *People* v. *Deibert*, 117 Cal.App.2d 410 [256 P.2d 355], held that this attack was not valid. At pages 418-419 we stated: "Where a statute contains a reasonably adequate disclosure of the legislative intent regarding an evil to be combatted in language giving fair notice of the practices to be avoided, a court will be slow to say that such a statute is too indefinite to be enforced. The complexities of the social problems dealt with by the Legislature require that a practical construction be given to the language employed by the draftsmen of legislation lest their purposes be too easily nullified by overrefined inquiries into the meanings of words. 'Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible.' (*People* v. *Kennedy*, 21 Cal.App.2d 185, 193 [69 P.2d 224].) The use of words of general meaning is the essence of our code system. Thus, in a sphere so vital to the community as the welfare of its youth, the words used in a statute designed to enable the Legislature to come to grips effectively with the problems of juvenile delinquency should be upheld where their frequent use in penal statutes gives assurance that they are understood by men of ordinary intelligence.

 "To comply with the constitutional requirement of due process of law, the crime for which a defendant is being prosecuted must be clearly defined, but it is only necessary that the words used in the statute be well enough known to enable those persons within its reach to understand and correctly apply them. 'To make a statute sufficiently certain to comply with constitutional requirements it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited.' [Citation.]

■ "Although higher standards of certainty will be required of penal than of civil statutes [citation], a statute is sufficiently certain if it employs words of long usage or with common-law meaning, 'notwithstanding an element of degree in the definition as to which estimates might differ [citations].' (*Lorenson* v. *Superior Court*, 35 Cal.2d 49, 60 [216 P.2d 859].) This same decision notes, with appropriate citations of authority, that California courts have upheld statutes employing such terms as: 'to make diligent effort to find the owner'; 'unreasonable speed'; 'unjustifiable physical pain or mental suffering'; and 'to the annoyance of any other person.'

"Applying these criteria and considering the relative certainty of words employed in the statutes referred to whose validity has been upheld, it is manifest that the words 'dissolute' and 'immoral' meet the constitutional standards of certainty and definiteness. A person charged with being a dissolute person is given sufficient warning of the nature of his offense. (*In re McCue*, 7 Cal.App. 765, 766 [96 P. 110].) 'Lewd' and 'dissolute' are terms often used interchangeably . . . 'Dissolute' is defined to mean: ''2. . . . loose in morals and conduct; wanton; lewd; debauched.'' Webster's New Inter. Dict., 2d ed.' (*People* v. *Babb*, 103 Cal.App.2d 326, 330 [229 P.2d 843].)''

■ Applying these principles to the challenged language in section 288, it cannot be said that the section is rendered unconstitutional on the theory that it is too vague, indefinite and uncertain.

■ Defendant's next contention is that he "was twice convicted for one act and twice held in jeopardy.'' His theory apparently is that but one criminal act was committed. In this, however, he is in error. The act of copulating the child is a specific crime that is denounced by section 288a. His subsequent conduct, though closely related in point of time, was nevertheless a separate criminal offense which is denounced by section 288 of the Penal Code. The defendant was therefore properly charged and convicted of the two crimes and he did not suffer double jeopardy. (*People* v. *Akers*, 143 Cal.App.2d 224, 228 [229 P.2d 398] ; *People* v. *Slobodion*, 31 Cal.2d 555, 561-563 [191 P.2d 1].)

Defendant's reliance on *People* v. *Greer*, 30 Cal.2d 589 [184 P.2d 512], is adequately disposed of in the Slobodion case, *supra*.

Defendant's fifth contention is that the evidence is insufficient to sustain the conviction of attempted kidnaping. He

argues that there is no proof of an attempt to take the alleged victim to another part of the county, and that the words "other part" of the county as used in the statute[3] are "too vague, indefinite and uncertain"; that it cannot be ascertained whether it means "a few inches away, across the street, around the corner, or into another political subdivision of the county." Defendant misconceives the point. ▆▆▆ It is the fact, "not the distance, of forcible removal which constitutes kidnaping in this state." (*People* v. *Chessman*, 38 Cal.2d 166, 192 [238 P.2d 1001]; *People* v. *Cluchey*, 142 Cal.App.2d 563, 565 [298 P.2d 633].) The court further observed in the Chessman case: "The fact that Regina in being kidnaped or carried away was forced to move only 22 feet does not make her abduction any the less kidnaping within the meaning of the statute."

▆▆▆ Defendant's act in opening the door of his car and pulling Ricky into it against his will and then, after quieting him, starting the motor, clearly shows an attempt to kidnap the child and amply sustains his conviction on that count.

▆▆▆ Finally, on this appeal, defendant contends that the evidence is insufficient to sustain his conviction of violating sections 288 and 288a. The simple answer to this contention is that Stanley testified to acts which show a clear violation of both sections, and the trial judge believed his story.

### APPEAL NUMBER 5979

▆▆▆ One of the conditions of defendant's probation in the child stealing case was that he was "not to associate with minors unless in the presence of responsible adults." Defendant's conviction in the later case involving misconduct with children was a clear violation of the quoted condition of his prior probation and obviously justified the revocation of probation and the imposition of sentence.

▆▆▆ "Since an appeal from the sentence is not authorized" (*People* v. *Millum*, 42 Cal.2d 524, 525 [267 P.2d 1039]), the purported appeals therefrom will be dismissed.

The purported appeal from the sentence in each case is dismissed. The judgment in each case is affirmed.

Ashburn, J., and Herndon, J., concurred.

---

[3]The material portion of section 207, Penal code, defining kidnaping, reads:

"Every person who forcibly steals, takes, or arrests any person in this state, and carries him into another country, state, or county, or into another part of the same county . . . is guilty of kidnaping."