[Crim. No. 10853.   In Bank.   May 5, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ROY LEROY
CARTER, Defendant and Appellant.

Martin Wolman, under appointment by the Supreme Court, and Gillin & Scott for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Anthony M. Summers, Deputy Attorney General, for Plaintiff and Respondent.

MOSK, J.—Once again the failure of a trial court to navigate adroitly between the Scylla of denying a defendant the right to determine his own fate and the Charybdis of violating his right to counsel by acceptance of an ineffectual waiver has brought a prosecution to grief.

Defendant appeals from judgments of conviction of kidnaping for the purpose of robbery (Pen. Code, § 209) and robbery while armed with a deadly weapon (Pen. Code, § 211a). Defendant argues, *inter alia,* that his waiver of counsel at trial was conditional and that the failure of the trial court to accept the condition or advise defendant at the time of his purported waiver that it intended to reject the condition was error which deprived defendant of his constitutional right to counsel. We have concluded that defendant did not effectively waive his right to counsel, and since the trial proceeded without counsel, the judgments of conviction must be reversed.

Defendant, with one Russell Gordon, was charged in count I of an information with kidnaping Homer Coran on May 29, 1965, for the purpose of robbery, and it was alleged that at the time of the commission of the offense defendant and Gordon were armed with a deadly weapon. In count II defendant, with Russell Gordon, was charged with robbing Homer Coran of $59 on May 29, 1965, and it was alleged that at the time of the commission of the offense defendant and Gordon were armed with a deadly weapon. Defendant is the only party with whom we are here concerned.

In the four months prior to trial, defendant was granted

numerous continuances and changes of counsel. On October 19, 1965, the case was called and defendant's attorney moved to be relieved and further moved that defendant be substituted in propria persona. Defendant joined in the motion and it was granted. The district attorney thereupon reminded the trial court that the law requires some form of inquiry to be made as to defendant's ability to defend himself before an effective waiver can occur, and undertook to question defendant as follows:

"Mr. Ross [deputy district attorney] : Mr. Carter, what is your age, sir? THE DEFENDANT: Thirty. MR. ROSS: And what schooling have you had? THE DEFENDANT: High school graduate. MR. ROSS: You are a high school graduate. Have you had any college courses of any kind? THE DEFENDANT: No. MR. ROSS: Where did you go to school? THE DEFENDANT: St. Louis, Missouri. MR. ROSS: Do you feel that you are capable of representing yourself? THE DEFENDANT: Yes, I do, *if I am granted the use of the law library.* MR. ROSS: Do you know what crimes you are charged with? THE DEFENDANT: Yes, I do. MR. ROSS: What crimes are you charged with? THE DEFENDANT: Robbery and Kidnapping, Grand Theft. MR. ROSS: You understand what the crime of Robbery is? THE DEFENDANT: Yes. MR. ROSS: You understand what the crime of Kidnapping is; is that correct? I have no other questions. If the Court feels he is capable—THE COURT: Very well. He is capable of defending himself. All right. We are ready to proceed. (Whereupon, the following proceedings were had in open court:) THE COURT: Will the clerk please swear in the panel. (Whereupon, the jury panel was duly sworn to answer questions touching upon their qualifications, following which 12 names were called by the clerk.) THE COURT: Well, ladies and gentlemen of the jury panel, I will address my remarks to the jurors whose names have been selected, and then ask the other members of the panel to listen to the explanation of the case and also the questions that will be asked of these jurors, so, in the event you occupy a position in the jury box, it will not be necessary to repeat the information or the questions. Can the lawyers approach the bench. (Whereupon, the following proceedings were had at the bench outside the hearing of the jury:) THE COURT: You want a motion? THE DEFENDANT: Yes. I wanted a motion—*time to go to the law library to review this case before I went to trial. That's what I asked for. I asked for it in court before I came here* and I would ask for the same thing here. I want to go pro. per., but I wanted

permission to use the law library. THE COURT: What is it you want to look up in the law library? Maybe we can get it for you. THE DEFENDANT: I wanted to review my case. I want to prepare my case. This is the first time I had my transcript in my hand. MR. ROSS: Your Honor, this case originally came from 'A'. THE COURT: I think it's too late. Let's see. You were arraigned on June 1 and you were notified at that time to have your lawyer. You said you would. The case was set for trial. THE DEFENDANT: I couldn't continue to pay him and I dismissed the lawyer. *This is the first time I have had my transcript,* and if I could possibly prepare myself for the case—THE COURT: You heard everything at the preliminary hearing. That's all that is in the transcript, is just what you heard. There isn't anything different in there. THE DEFENDANT: I still don't feel as though I can go in as short a time without my transcript. THE COURT: Motion is denied. Very well. THE DEFENDANT: I would like to put on the record that it is impossible for me to defend myself pro. per. without permission of the law library.'' (Italics added.)

Thereupon trial was resumed with defendant steadfastly refusing to participate because of the court's failure to meet the condition of his waiver. Subsequently, defendant was found guilty of all crimes charged and sentenced to state prison.

Speaking of the right to counsel and the effective waiver thereof, we declared in *People* v. *Douglas* (1964) 61 Cal.2d 130, 434-435 [38 Cal.Rptr. 884, 392 P.2d 964]: '' 'The right to counsel is a fundamental constitutional right, which has been carefully guarded by the courts of this state.' (*In re James,* 38 Cal.2d 302, 310 [240 P.2d 596].) Meaningfully applied, the right to counsel includes the opportunity to receive 'effective aid in the preparation and trial of the case.' (*Powell* v. *Alabama,* 287 U.S. 45, 71 [77 L.Ed. 158, 172, 53 S.Ct. 55, 84 A.L.R. 527]; *People* v. *Mattson,* 51 Cal.2d 777, 790 [336 P.2d 937].) To be sure, this right may be waived (*Johnson* v. *Zerbst,* 304 U.S. 458, 465 [82 L.Ed. 1461, 1467, 58 S.Ct. 1019, 146 A.L.R. 357, 362]; *People* v. *Rocco,* 209 Cal. 68 [285 P. 704]), but 'a finding of waiver is not lightly to be made.' *Moore* v. *Michigan,* 355 U.S. 155, 161 [2 L.Ed.2d 167, 172, 78 S.Ct. 191].) 'It has been pointed out that ''courts indulge every reasonable presumption against waiver'' of fundamental constitutional rights and that we ''do not presume acquiescence in the loss of fundamental rights.'' A waiver is

ordinarily an intentional relinquishment or abandonment of a known right or privilege.' (*Johnson* v. *Zerbst, supra,* 304 U.S. at p. 464 [82 L.Ed. at p. 1466, 58 S.Ct. 1019, 146 A.L.R. at pp. 361-362].) These principles are 'equally applicable to asserted waivers of the right to counsel in state criminal proceedings.' (*Carnley* v. *Cochran,* 369 U.S. 506, 515 [8 L.Ed.2d 70, 77, 82 S.Ct. 884].) Not only must the waiver be unqualified, but it may be made only by a defendant who has been apprised of his rights and who has 'an intelligent conception of the consequences of his act.' (*In re Tedford,* 31 Cal.2d 693, 695 [192 P.2d 3].)"[1]

In the present matter there was no effective waiver of the right to counsel. Manifestly, a waiver of counsel which is made conditional by a defendant cannot be effective unless the condition is accepted by the court. Here it is clear from the record that defendant's willingness to proceed without counsel was predicated upon his mistaken belief, reinforced by the failure of the trial judge to promptly and unequivocally reject the condition imposed by defendant, that he would be permitted some sort of meaningful access to and use of library facilities.

While we adhere to the view expressed in *People* v. *Douglas* (1964) *supra,* 61 Cal.2d 430, 435, that "the right to counsel may not be used to subvert the orderly and efficient administration of justice (*People* v. *Thomas,* 58 Cal.2d 121, 131 [23 Cal.Rptr. 161, 373 P.2d 97] ; *United States* v. *Bentvena,* 319 F.2d 916, 936), and its utilization as a tool for dilatory purposes may not be permitted (*People* v. *Adamson,* 34 Cal.2d 320, 332-333 [210 P.2d 13].)," we find the cases cited by the People to be distinguishable. In *People* v. *Thomas* (1962) 58 Cal.2d 121 [23 Cal.Rptr. 161, 373 P.2d 97], the defendant, although not a lawyer, was well versed in criminal procedure and represented himself competently throughout the trial. Moreover, unlike the present matter, the defendant in *Thomas* was permitted many hours in the law library to prepare his case. Further, we noted in *Thomas* that our holding was applicable to "A defendant who, with an intelligent conception of the consequences of his act, declines the aid of counsel. . . ." We believe the defendant here was unaware of the true consequences of his purported waiver, as he believed he would be permitted reasonable use of library facilities. His conduct throughout the trial was consistent with that belief.

[1]The entire area of an accused's right to proceed without counsel is discussed in an excellent Note in 49 Minn. L. Rev. 1133 (1965).

Also distinguishable is *People* v. *Ortiz* (1961) 195 Cal. App.2d 112 [15 Cal.Rptr. 398], wherein the defendant was granted precisely that which defendant here was denied, "a couple of weeks" to prepare for trial in propria persona. *People* v. *Nunn* (1963) 223 Cal.App.2d 658 [35 Cal.Rptr. 884], involved a nonindigent, who despite repeated warnings and continuances by the trial court apparently refused to employ private counsel. Moreover, the defendant was well aware that if he "did not come in with counsel" he should be prepared to try the case. Similarly, in *People* v. *Smith* (1963) 223 Cal.App.2d 394 [36 Cal.Rptr. 119], the defendant discharged his original attorney and sought appointment of new counsel in the middle of the trial and *after* the prosecution had rested its case in chief.

We find no merit in the People's speculation that "appellant *seemed* to reject a proffered chance to use the library." It appears from the transcript[2] that the court was offering defendant merely a brief tour of a library, rather than an opportunity to make appropriate use of its facilities or to study the preliminary transcript in conjunction with those facilities.

Although the question here presented is not whether defendant in fact had a right to use library research facilities but whether an unconditional waiver was made, it is appropriate to comment upon the former issue for purposes of retrial. (Code Civ. Proc., § 53.) We held in *In re Allison* (1967) *ante*, pp. 282, 289 [57 Cal.Rptr. 593, 425 P.2d 193], that "There is no statutory right to engage in [legal] research; nor is there any constitutional duty laid upon the states to provide facilities for that purpose, so long as access to the courts is not thereby unreasonably impeded." (See also *Hatfield* v. *Bailleaux* (9th Cir. 1961) 290 F.2d 632.) In *Allison*, however, we further noted with approval that inmates of California prisons enjoy the use of law library facilities where available. ▪ It follows that a prisoner awaiting trial who wishes to represent himself should likewise, at a

---

[2]After the trial was under way, the following occurred:

"THE COURT: You want to see the law library. We will make some arrangements. I have asked you if there is anything in the law library you want. We will try to get someone to get it for you, and also I will take you in during the recess and let you go through the law library. If that isn't enough, we will try and make some other arrangements for you. Every concession that we can possibly make has been made to you.

"THE DEFENDANT: I don't think 20 minutes would qualify me to defend myself in court at all."

minimum, be allowed reasonable access to such legal materials as are available at the facility in which he is confined. Having thus stated the minimum requirements, we leave to the sound discretion of the trial judge the implementation of the rule, noting only that in many felony cases the minimum may not be sufficient.[3]

Finally, although every defendant in a criminal case has the constitutional right to represent himself if he so elects (Cal. Const., art. I, § 13; *People* v. *Harmon* (1960) 54 Cal.2d 9, 15 [4 Cal.Rptr. 161, 351 P.2d 329]; *People* v. *Mattson* (1959) 51 Cal.2d 777, 788-789 [336 P.2d 937]; *People* v. *Shields* (1965) 232 Cal.App.2d 716, 722 [43 Cal.Rptr. 188]; *People* v. *Shroyer* (1962) 203 Cal.App.2d 478, 482 [21 Cal. Rptr. 460]), before his waiver of counsel may be accepted the trial court is duty bound to determine his competency to represent himself. (See, e.g., *In re Johnson* (1965) 62 Cal.2d 325, 335-337 [42 Cal.Rptr. 228, 398 P.2d 420], and cases there cited.) As stated in *Johnson* (at p. 335), " 'the court cannot accept a waiver of counsel from anyone accused of a serious public offense without first determining that he "understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, or the punishments which may be exacted [quoting from *In re James* (1952) 38 Cal.2d 302, 313 [240 P.2d 596]]." ' " The inquiry into the defendant's ability to defend himself fulfills a two-fold purpose. It serves not only to determine his competence, but also to alert him to the seriousness of the action he contemplates as well as the pitfalls he may expect to encounter.

This determination involves an exercise of discretion by the trial judge which, in the absence of a showing of abuse, will not be disturbed on appeal. (See, e.g., *People* v. *Shroyer* (1962) *supra,* 203 Cal.App.2d 478, 482-483; *People* v. *O'Ward* (1959) 168 Cal.App.2d 127, 131 [335 P.2d 762]; *People* v. *Loignon* (1958) 160 Cal.App.2d 412, 417 [325 P.2d 541].) The scope of the inquiry will, of course, vary according to the seriousness of the crime charged. On the basis of

---

[3]Thus in *People* v. *Thomas* (1962) *supra,* 58 Cal.2d 121, the defendant was permitted many hours in the law library under guard. It is axiomatic that the more serious the crime, the greater the indulgence the trial judge should show towards a defendant. For example, it has already been held that it is within the sound discretion of the trial judge to appoint advisory counsel in a proper case. (See *People* v. *Linden* (1959) 52 Cal.2d 1 [338 P.2d 397]; *People* v. *Mattson* (1959) 51 Cal.2d 777 [336 P.2d 937]; see also *People* v. *Jackson* (1960) 186 Cal.App.2d 307, 317 [8 Cal.Fptr. 849].)

the excerpts from the transcript set out hereinbefore, we entertain grave doubts as to the sufficiency of the court's cursory inquiry into defendant's competency to represent himself in this case.

We do not mean to imply that the trial judge must impart a legal education to a defendant seeking to appear in propria persona. Nor need such a defendant possess the knowledge and understanding of an attorney (see *People* v. *Linden* (1959) *supra,* 52 Cal.2d 1, 17) ; indeed, it is the very discrepancy between the legal skills of the layman and those of the licensed practitioner which fosters our deep concern to protect the right to the assistance of counsel against hasty and improvident waiver. However, in reviewing a trial judge's determination of a defendant's competence to represent himself, we will not accept a mere superficial inquiry.

The judgments are reversed.

Traynor, C. J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgments for the reasons expressed by Mr. Justice Fourt in the opinion prepared by him for the Court of Appeal, Second Appellate District, Division One, and concurred in by Mr. Presiding Justice Wood and Justice Lillie, which is quoted in full below :

This is an appeal from a judgment of conviction of kidnaping for the purpose of robbery.

In an information filed in Los Angeles County on June 16, 1965, defendant, with Russell Gordon, was charged in count I with kidnaping Homer Coran on May 29, 1965, for the purpose of robbery and it was alleged that at the time of the commisison of the offense the defendants were armed with a deadly weapon, to wit, a .32 caliber automatic pistol. In count II defendant, with Russell Gordon, was charged with robbing Homer Coran on May 29, 1965, of $59 and it was alleged that at the time of the commission of the offense the defendants were armed with a deadly weapon, namely, a .32 caliber automatic pistol. Appellant here, Carter, was the only defendant at the trial with which we are here concerned. In a jury trial he was found guilty as charged and, further, it was found that he was armed at the time of his arrest.

On June 22, 1965, appellant was brought before the court for arraignment and requested a continuance to June 25, 1965, to allow him time to employ counsel. On June 25, 1965, the public defender was appointed to represent appellant and his codefendant Gordon. On July 1, 1965, each of the defendants, with their counsel present, pleaded not guilty and trial was set for August 10th, 1965. On August 10, 1965, the defendants moved for a continuance of the trial to August 17, 1965, to enable them to secure private counsel. On August 17th, 1965, defendant Gordon appeared with the public defender as counsel and appellant appeared with William Leeds as his attorney. A motion was made by appellant to substitute Leeds as his attorney and the same was granted. Each defendant made a motion to continue the trial date to September 21, 1965. On September 21, 1965, appellant was present in court with his attorney, William Leeds. Attorney Jermiah was substituted as counsel for appellant in place of William Leeds. On motion of defendants the trial was continued to October 19, 1965. On October 19, 1965, a motion by the appellant for a continuance was denied. The motion of attorney J. Casselman to substitute out as the attorney of record for appellant was denied. Appellant thereupon made a motion to substitute himself as his own attorney and that motion was denied. Trial of appellant was transferred to Department Southwest E forthwith. In the latter named department, on October 19, 1965, the case was called for trial at 1:52 p.m. and attorney R. Adlen of the firm of Adlen and Casselman made a motion that he be relieved as attorney of record and that appellant be substituted in propria persona. Such motion was granted. Outside of the hearing of the prospective jurors appellant's motion for a continuance was denied, ''it having first been established that the Defendant was competent to represent himself.''

Mr. Adlen stated to the court after the granting of the motion to relieve him from representing the appellant that ''the defendant would request the privilege to use the law library as he is incarcerated.'' The judge replied, ''I don't know how we can do that. We will try and work it out some way.'' and continuing, ''All right. In other words, Mr. Carter, you want to represent yourself?'' and Carter replied, ''Yes, sir.'' The judge then said, ''So you join in the motion to release your lawyer from further responsibility in the proceedings?'' and Carter said, ''Yes, sir.''

Inquiry was then made about Carter's age and schooling;

it was ascertained that he was thirty years of age and a high-school graduate. When asked if he felt that he was capable of representing himself, he said, ''Yes, I do, if I am granted the use of the law library.'' He was fully aware of the serious-ness of the crimes with which he was charged. The court found that Carter was ''capable of defending himself'' and proceeded with the trial.

Outside of the hearing of the prospective jurors Carter stated that he wanted time to go to the law library to review the case before he went to trial. The judge indicated that it was too late and called attention to the fact that the arraign-ment was in June 1965. Carter then indicated that it would be impossible for him to defend himself without permission to use the law library. The judge properly advised Carter that he, Carter, had brought the entire situation onto himself; that he, Carter, had been told that the case was going to trial, that he had a lawyer who was ready and able to represent him and that he, Carter, had ''fired'' his lawyer that very day. A jury was selected and the cause proceeded to trial.

The prosecution called two witnesses, the victim, a taxi-cab driver, and an arresting police officer. The victim positively identified Carter as the man who had placed a gun close to his head and demanded his money and, further, as one of the men who had directed at gunpoint that he get into the passenger or right seat of his taxi-cab. He said that thereafter one of the men held a gun pointed at him while the other drove the cab away. The victim identified the gun found in Carter's posses-sion as being like the one used in the robbery and the kidnap-ing. He testified that several blocks from where the robbery occurred, defendants caused the cab to stop, directed the victim to undress and had him get into the trunk of the cab; that he, the victim, later, and after Gordon and Carter left the scene, extricated himself from the trunk of the cab, called his dispatcher, who, in turn, called the police. Approximately $59 in money was taken from the victim by Carter. One of the bills or currency was torn at one of the corners. When the police arrived, the victim gave them a complete description of the men who had robbed and kidnaped him.

Officer Munoz testified that shortly after receiving the police radio call about the robbery, he and his partner saw two men who matched the description of the robbers hurrying across a street intersection. The officers stopped the men shortly thereafter and conducted a weapon search during which they found a Colt .32 automatic pistol in the rear hip

pocket of Carter. The gun was loaded with live ammunition in the magazine and chamber and was ready to fire. The gun was taken from Carter, a further search was conducted and some currency was taken from the pants of Carter. The victim identified some of the currency taken from Carter as being some of the currency taken from him in the robbery. A police lineup was conducted and the victim identified Carter and his codefendant as being the robbers and kidnapers.

Carter was asked at the trial if he desired to ask the officer any questions and he declined, saying:

"THE DEFENDANT: Your Honor, I would like to put in the record that I refuse to ask the witnesses any questions in any way or participate in any way such as this because I am not qualified to, and I didn't intend to defend myself pro per today because I intended to have time to prepare myself for this particular trial."

The judge replied:

"THE COURT: Well, Mr. Carter, that just isn't a true statement. Here on June 22 you appeared at that time. You asked for a lawyer and so the Public Defender's Office appointed a lawyer for you, and on June 22 they asked for a continuance at that time so that you could produce any other facts or whatever you wanted to do.

"  .   .   .   .   .   .   .   .   .   .   .   .   .

"THE COURT: And it was continued until June 25. Then at that time the trial was asked to be continued again and the trial was continued again—continued again until August 10 so they could comply with your request. Then on August 10 it was continued again. It was continued until August 17. Then at that time you said you wanted to change lawyers so you did. You changed lawyers and you hired a Mr. William Leeds, so Mr. Leeds then represented you, and he asked for—that the trial be continued, and the Court granted your request and it continued it again, and it continued it until September 21. Then at that time we came on for trial on September 21. You wanted the case continued. You didn't want to go to trial and you said you wanted to change lawyers, so you did. The Court granted you an opportunity to change the lawyers. You did. You changed the lawyers again, and a lawyer named Mr. James Casselman was appointed as your lawyer, and then the case was continued again, and it was continued again until October 19. That's today.

"   .    .    .    .    .    .    .    .    .    .    .    .

"THE COURT: Then on today you come on for trial today. You have had the benefit now of three different lawyers and you come on today now and then when you get ready to try it, you advise that you want to dismiss the lawyer that appeared here today, too.

"   .    .    .    .    .    .    .    .    .    .    .    .

"THE COURT: So we have done—every posible legal advice has been given to you, everything we can possibly do. Then you ask for permission to use the library, so I tell you all right, you designate, tell us what you want out of the library and we will get it for you. We have it right here and I will get it for you, but there wasn't anything that you designated so I don't think there is anything we can possibly do that we haven't already done to give you every opportunity to. Now, is there anything you want to ask this witness right here?

"   .    .    .    .    .    .    .    .    .    .    .    .

"THE COURT: Is there anything you want to ask this witness here?"

Carter responded by saying:

"THE DEFENDANT: I refuse to ask the witness any questions. I would like not to be asked to participate in the trial whatsoever because I am not qualified."

The judge then dismissed the policeman from further attendance at the trial. The prosecution rested its case and at 3:30 p.m. the matter was continued to the following day at 9:30 a.m. On the next day Carter offered no testimony in his behalf. The cause was argued. The jury retired to deliberate at 10:05 a.m. and returned with a verdict of guilty as charged in the information and further found that Carter was armed at the time of his arrest. A time of sentence and the hearing of a report of the probation officer was set. At that hearing the judge noted:

"THE COURT: Very well. I have read the probation report and it is very unfavorable. It starts with a number of actions going back as far as 1953, some in '55, '56, some in '57, '58, '60, '61, '62, '64, '65. It will be the sentence of this Court that the request for probation be denied, that the defendant be sentenced to the State Prison for a term to be fixed by the Adult Authority."

Carter was sentenced on November 22, 1965, for the crime of kidnaping for the purpose of robbery (Pen. Code, § 209) as charged in count I of the information, "defendant having

been found armed as alleged." No sentence was imposed for the robbery charges.

Appellant has appealed from the "judgment made and entered . . . on the 20th day of October . . . 1965 and from the whole thereof." The verdict of the jury was returned on October 20, 1965, but the judgment was made on November 22, 1965. We assume that the appeal is from the judgment of November 22, 1965.

Appellant now asserts that he did not make an intelligent waiver of counsel, that the jury found that he was armed at the time of his arrest while the information charged that he was armed at the time of the commission of the offenses.

No useful purpose would be served in again relating or listing the numerous continuances and the changes of attorneys in this case. Suffice it to say that appellant clearly stated that he wanted to represent himself. In *People* v. *Thomas,* 58 Cal.2d 121, 131-132 [23 Cal.Rptr. 161, 373 P.2d 97], it is appropriately said:

"It is manifest that no abuse of discretion can be charged to the court in bringing the matter to trial when it did. 'To hold that a defendant charged with crime has an absolute right to counsel of his own selection, with unlimited right to insist upon continuances of his trial, would be subversive of the prompt administration and execution of the laws—upon which depends largely their effectiveness. It is at once apparent that the trial court must in the nature of things have some control over such matters, to the end that judicial business may be dispatched in an orderly manner; and if it has any discretion it is apparent to us that such discretion was not abused in this particular instance.' [Citations.] On at least two prior occasions defendant's statements to the court that he was proceeding in propria persona and did not want appointed counsel constituted waivers of his right thereto. 'The right to the assistance of counsel guaranteed by the constitutional and statutory provisions, like any other legal right, may be invoked only in the course of orderly procedure. A defendant who, with an intelligent conception of the consequences of his act, declines the aid of counsel prior to or at the commencement of his trial, is not entitled thereafter to interrupt and delay the hearing at any stage he deems advantageous merely to interpose a demand for legal assistance. [Citations.] When petitioner stated at the time of his arraignment that he did not need an attorney, the court was justified in taking him at his word [citations]. His attitude, both at

that time and at the commencement of the trial, was equivalent to a final declination of counsel. . . .' [Citation.] In the instant case it cannot be said that the waiver was not comprehended and understood by defendant. [Citation.]''

And in *People* v. *Ortiz*, 195 Cal.App.2d 112, 116-117 [15 Cal.Rptr. 398], it is stated:

''. . . It has been declared to be a 'sound concept that it is the duty of the court to safeguard and promote the orderly and expeditious conduct of its business and to guard against inept procedures and unnecessary indulgences which would tend to hinder, hamper or delay the conduct and dispatch of its proceedings.' [Citations.]''

It is clear in this case that appellant was deliberately stalling, procrastinating and seeking one continuance after another to delay the trial of the cause. It was no abuse of discretion to refuse to further coddle appellant. There was no incapacity of counsel, indeed on the day of trial counsel was present and apparently ready to go to trial and appellant agreed that counsel should be relieved from representing him. If appellant was not prepared for trial, he should not have permitted the discharge of his then attorney. It was on the date of trial some four months after the arraignment when appellant made his last motion for a continuance. The People are entitled to some considerations in the disposition of criminal matters.

As heretofore stated, appellant was sentenced for the crime as charged in count I, kidnaping for the purpose of robbery. The information recited that appellant was armed at the time of the commission of the offense. The verdicts recite:

''We, the Jury in the above entitled action, find the Defendant Roy Leroy Carter guilty of violation of Section 209, Penal Code (Kidnaping for the Purpose of Robbery), a felony as charged in Count I of the information.

This 20 day of October 1965      W R JONES [s]

Foreman

Verdict (Guilty)''

''We, the Jury in the above entitled action, find the charge against the Defendant Roy Leroy Carter of having been armed at the time of his arrest as contained in Count I (Kidnap) of the (Information true.

~~(Indictment~~

This 20 day of October 1965      W. R. JONES [s]

Foreman''

680

The charge in the information included the charge that appellant was at the time of the commission of the offense armed with a deadly weapon, a .32 caliber automatic pistol. The requisites of Penal Code section 1158a were fulfilled. (See *People* v. *Flohr,* 30 Cal.App.2d 576, 581 [86 P.2d 862]; *People* v. *Ahouse,* 162 Cal.App.2d 586, 588-589 [328 P.2d 227]; *People* v. *Cooks,* 235 Cal.App.2d 6, 14-15 [44 Cal.Rptr. 819].)

The uncontradicted evidence demonstrates that appellant was in fact armed with the automatic pistol at the time of the kidnaping and the robbery and at the time of his arrest.