[Crim. No. 378.   Fifth Dist.   Feb. 1, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. BURL
NEWTON, Defendant and Appellant.

William H. Sanderson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Stephen Cooper, Deputy Attorney General, for Plaintiff and Respondent.

STONE, J.—Defendant was convicted by a jury of possession of marijuana, two counts of manslaughter, and of driving while intoxicated. The jury found against defendant on his plea of not guilty by reason of insanity.

Upon this appeal defendant relies primarily upon the contention the court abused its discretion in denying his request to dismiss counsel the second day of the trial and to proceed in propria persona. ■ His other ground of appeal, that the court violated Penal Code section 654 in sentencing him on separate counts arising out of the same transaction, proves to be without foundation upon examination of the record. The court followed the procedure outlined in *People* v. *Niles,* 227 Cal.App.2d 749, 755-756 [39 Cal.Rptr. 11], and *People* v. *Gomez,* 252 Cal.App.2d 844, 859 [60 Cal.Rptr. 881], by suspending execution of sentence on all but one count of those sentences arising out of the same transaction.

■ Turning to defendant's contention that he was improperly denied the right of self-representation at the trial, we note that Deputy Public Defender Germino investigated the case and represented defendant at the preliminary hearing and through the first day of trial. At the beginning of the second day, at the request of Germino, the court convened in chambers, out of the presence of the jury. At that time the judge read a letter from defendant[1] addressed to Germino,

---

[1]Letter from Burl Newton to Mr. Germino, ''Re: Defense counselor for the case People versus Burl Newton'':

''I respectfully desire your legal services to be withdrawn in this case. I would much rather, and prefer this action to take place in the Honorable Judge, and referees chambers, or at least in a setting removed from the jury's presence.

thanking him for the manner in which he investigated the case and for his efforts and legal services, but asking Germino to withdraw from the case. After a lengthy conference with defendant, defense counsel, and the district attorney, the trial judge denied defendant's request.

■ The principles governing the determination the trial court was required to make when defendant requested withdrawal of his counsel are summarized in *People* v. *Carter*, 66 Cal.2d 666, 671-672 [58 Cal.Rptr. 614, 427 P.2d 214], as follows: "Finally, although every defendant in a criminal case has the constitutional right to represent himself if he so elects [citations], before his waiver of counsel may be accepted the trial court is duty bound to determine his competency to represent himself. (See, e.g., *In re Johnson* (1965) 62 Cal.2d 325, 335-337 [42 Cal.Rptr. 228, 398 P.2d 420], and cases there cited.) ■ As stated in *Johnson* (at p. 335), ' "the court cannot accept a waiver of counsel from anyone accused of a serious public offense without first determining that he 'understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, or the punishments which may be exacted (quoting from *In re James* (1952) 38 Cal.2d 302, 313 [240 P.2d 596])' " ' " The inquiry into the defendant's ability to defend himself fulfills a twofold purpose. It serves not only to determine his competence, but also to alert him to the seriousness of the action he contemplates as well as the pitfalls he may expect to encounter.

■ "This determination involves an exercise of discretion by the trial judge which, in the absence of a showing of abuse, will not be disturbed on appeal. [Citations.] The scope of the inquiry will, of course, vary according to the seriousness of the crime charged."

■ Relating the facts of our case to the principles enunciated above, it is significant that defendant's request to rep-

---

"I can surely realize your feelings, however, be assured, I am near physical illness along with regrets, *remore* [Judge: I suppose that is remorse] et cetera, physiological, from the very dire necessity of this decision.

"Being a human myself, I do not anticipate your good will nor your acceptance of my apology herein. Nevertheless I want you to be *cognant* of my appreciation for a very fine bit of investigative and your total efforts to avail me of your legal services. Therefore, if the outcome of my trial is good and victorious, be assured if any clay vessel such as we are allowed any merit of credit, be assured that this shall be a victory for you and your efforts, if that be the case. Or if defeat is forthcoming, then indeed this is my error and defeat, but irregardless, my neighbor and friend, this is my life, or at least my charge.

"Thank you once again and good by and good luck. Go with God."

resent himself was not made before trial, but after the case had been partially tried. The importance of this fact is, as we shall develop later, that defendant's dissatisfaction with his attorney did not result from an irreconcilable difference between them (cf. *People* v. *Moss*, 253 Cal.App.2d 248 [61 Cal.Rptr. 107]) but from defendant's misunderstanding of the charges he faced and the rules of evidence. Defendant's discussion of the case, particularly of the happenings during the one day of trial, gave the court some insight into defendant's comprehension of the case and his state of mind. In the first place, defendant did not understand the nature of the charges against him; it is clear that he was confused by the five counts of the information: possession of marijuana, count one; vehicular manslaughter of Trinidad Gonzales, count two; vehicular manslaughter of Henry Gonzales III, count three; driving while intoxicated, count four; driving while intoxicated and under the influence of a drug, count five.

It seems equally evident from his discussion of the testimony given the day before,[2] that defendant had no conception of the procedural problems he faced should he represent himself during the remainder of the trial. He manifested a lack of knowledge of the rules of evidence, and of the purpose and relevancy of evidence. His dissertations were rambling and might well have indicated to the trial judge that defendant was unable to think clearly enough, or to respond alertly enough, to prevent the trial from becoming a mockery, a farce and a sham. Certainly the trial judge was right when he stated he could not advise defendant, that a judge cannot become an advocate for a defendant who is not capable of representing himself.

Any doubts about the matter we resolve in support of the trial court's exercise of discretion, as defendant gave the

[2] "DEFENDANT: Well, it seems, frankly, your Honor, that there is a lot of questions about inconsequential sust*inance* and things. It seems to be much labor—much chopping but not chips flying. As a hypothetical question you might recall the witness or the driver of the vegetable *proveyor* but I don't know where the prosecution comes up with him or how but he comes in and says an obvious statement, although it was false. I did get out of the automobile, I was in the accident, but he could not have seen me get out of the accident in the fashion that he described and there are some grounds that I am confident that this can be proven to a degree, perhaps not all the way, but it could be shown that the man is misinterpreting the time of the accident and perhaps the arrest of the defendant and he got mentally confused. I don't think that he would—he is in any way a coerced perjuror or anything of that nature or does it willingly. I certainly don't believe anything like that but I do think that he is mentally confused to when he did see the defendant

trial judge reason to believe that he, defendant, agreed with the trial court's decision that counsel should continue to represent him. The judge asked, ''Assume for the moment that the court did relieve Mr. Germino or permit Mr. Germino to be withdrawn as your counsel . . . how would you then proceed, by acting as your own attorney?'' Defendant replied, in part, ''I would petition the Court, your Honor, to instruct me on the proceedings of the court and to allow me, a layman of the law, to proceed in my own behalf as my own defense counselor.''

In response, the court said: ''Now, when it comes to the matter about an attorney or your relationship with an attorney you would indicate that you would ask for some suggestions from the Court or some indication from the Court as to how you should proceed. I will have to advise you that this the Court cannot do. If you represent yourself you are charged with the same amount of knowledge as anybody else would have in this matter and that it is not possible for the Court to put you in a different position or category than it would put opposing counsel in. I have to expect the same thing from anybody who represents your side, whether it is you or an attorney, that I would expect of anybody else. Now, *bearing this in mind, it seems to me that it isn't a very feasible thing to switch horses in the middle of the stream.*'' (Italics added.) Defendant replied, ''I agree, your Honor, I agree.''

There followed a discussion between the court and defendant concerning testimony and questions which defendant felt Mr. Germino should have asked witnesses. The court made some suggestions to defendant concerning cooperation between him and his counsel. At that point Mr. Germino advised the court that if he were to continue representing defendant

---

about the automobile. There are newspaper photographs of where the defendant is in custody and the Highway Patrol Officer has him draped over the fender of the Cadillac sedan and he was questioned in the accident and the defendant was dressed at that time like he described and actually when the defendant did get out—did crawl out of the automobile, his immediate actions were to go to the other automobile after cursory searching for the other party, the driver of the Cadillac.

''. . . .

''DEFENDANT: Yes, and another problem that I see and the magnification of this same man, he comes in and he tells the Court that he saw the defendant get out of the automobile. Well, when he saw him he corrected himself. He said he was already out on the ground. Well, anyone in an accident, they are going to have to get out of the car or be taken out of it. I mean this is not saying anything when they bring a man all this way to say something like that. My counselor wouldn't even bring this point up.''

he wanted it understood that he was in control of the case but "with consulting with the defendant." However, he asked the court to admonish defendant not to interrupt the trial by interfering with his (Germino's) conduct of the case. The court suggested that defendant write his comments to counsel on a sheet of paper, rather than speaking out and interrupting proceedings. The following occurred:

"DEFENDANT: Your Honor, if I may speak, as Mr. Germino suggested there, I will go along with whatever are his decisions. I will have no problem, I will just be a spectator.

THE COURT: I don't think you will have to be that. You are a most interested spectator, if I may put it that way.

MR. GERMINO: I didn't mean that.

DEFENDANT: No hard feelings or anything of that nature. Far be it from that. *You took the load off of my shoulders is all you have done.* Either I have to try to do what my mind tells me to do as I have been led to do so many times and neglected to do it." (Italics added.)

In view of all the circumstances presented, including defendant's apparent agreement with the trial court's conclusion that counsel should continue to represent him, we find no abuse of discretion on the part of the trial judge. (*People* v. *Carter, supra,* 66 Cal.2d at p. 671.)

The judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 17, 1968.