[Crim. No. 17451. Second Dist., Div. Five. Oct. 27, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
EDDIE MILTON NABORS, Defendant and Appellant.

COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jeffrey C. Freedman, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

AISO, J.—Defendant Eddie Milton Nabors appeals from a judgment of conviction entered upon jury verdicts finding him guilty of four counts of robbery of the first degree[1] (Pen. Code, §§ 211 and 211a) perpetrated in the holdup of two liquor stores on the afternoon of January 24, 1969. By amendment to the information, defendant was charged with a prior felony conviction for forgery (Pen. Code, § 475) which he admitted prior to the jury selection and again upon cross-examination when he testified. However, no finding was made as to this prior in the judgment.[2] Motion for new trial and request for probation were denied. Defendant was

[1]These were counts I, II, III and IV of an eight-count information which charged not only defendant but his two codefendants, Tommy Lee Fowlkes and Donald Shrigley Martin, with these robberies, and which additionally charged all three in counts V, VI, VII and VIII with kidnaping for purposes of robbery (Pen. Code, § 209). The kidnaping counts were dismissed upon prosecution motion at the commencement of trial. Following impanelment of the jury, codefendants Fowlkes and Martin pleaded guilty to robbery of the first degree as charged in count IV and the trial to the jury proceeded as to defendant only. Count I pertains to the holdup at 3816 West Pico Boulevard and counts II, III, and IV to the holdup at 4111 West Venice Boulevard, Los Angeles, where there were three different robbery victims.

[2]It appears from the reporter's and clerk's transcripts that this prior refers to the conviction in superior court case No. A229992 on which defendant was on probation. In conjunction with the sentences imposed in the principal case, the court found defendant in violation of the terms and conditions of probation in case No. A229992, revoked probation, and sentenced defendant to state prison.

sentenced to state prison with sentence on each of the four counts to run concurrently with each other, but consecutive to the sentence imposed in case No. A229992. The appeal (construing his pro se notice liberally per rule 31(b), Cal. Rules of Court) is from the judgment in the principal case only.

Sufficiency of the evidence is not questioned. Defendant advances two contentions on appeal: (1) the pretrial lineup violated defendant's constitutional rights to counsel and to due process, and (2) the trial court erred in refusing his request to act as his own counsel in propria persona. We conclude, nevertheless, that the judgment should be affirmed.

## The Lineup

Only the contention that the lineup as conducted failed to meet the requirements of *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] requires extended discussion.

Defendant and his two codefendants were represented at the lineup by a deputy public defender who had been summoned by the police officers conducting the lineup. A deputy district attorney called in like manner attended on behalf of the People. According to the public defender, the lineup was conducted about 11 a.m., on January 28, 1969,[3] at the Wilshire station of the Los Angeles Police Department. It lasted a total of from five, eight, or ten minutes.

While the public defender had several points of dissatisfaction as to the manner in which the lineup was conducted, the only one urged by defendant's trial counsel at the extensive hearing held out of the jury's presence was that the failure to seat the public defender in the same room as the witnesses to check on any conversation that might occur with or among them during the lineup rendered the lineup unfair. He argued that he should be given an opportunity to cross-examine or *voir dire* any witness who had participated in the lineup prior to such witness testifying.[4]

Upon this aspect of the lineup, Sergeant Dale E. Brown testified: The room in which the witnesses were seated was a small room, only 3 feet by 8 feet, with one bench inside. A screen separated this room from the larger room, 12 feet by 9 or 10 feet, in which the prisoners were lined up.

---

[3] When defendant testified at the trial he stated that the lineup took place about three or four hours after his arrest, which was on January 24, 1969.

[4] Having examined the record thoroughly, we do not feel that counsel's not pressing the other points on which the public defender had registered dissatisfaction deprived defendant of any legitimate or substantial defense. Nor does it constitute any basis for claiming any incompetence on the trial counsel's part.

The public defender was seated behind this screen at the entrance to the larger room. Although separated by the screen, he was only about three feet distant from Sergeant Brown, who was squatted down in the corner of the smaller room in order to permit the six witnesses in the smaller room to see the lineup. From his past experience, two people situated as he and the public defender were could hear each other speak in an ordinary conversational tone. He instructed the witnesses not to talk during the lineup, not even to him. They were to inform him after the lineup if they were able to identify anyone in the lineup.

In this regard, the deputy public defender testified that he had requested permission to sit in the same room as the witnesses. Permission was denied on the ground that the room was too small to accommodate him and the other seven persons. As the lineup was being formed, he heard some preliminary remarks made to the witnesses. After the lineup, Sergeant Brown informed him that all three defendants who were in the lineup had been identified.

The trial judge agreed with defendant's trial counsel that a violation of the *Wade* rules had occurred, but that the posture of the evidence as indicated above did not show "that the line-up was unfair and prejudicial." He acknowledged defendant's "right to call, even though they are hostile witnesses, the police officers for the purpose of cross-examining them to attempt to establish that there were some suggestions made by the officers," and that defendant had "a right to call and examine the four or more witnesses who were present at the line-up for the purpose of establishing that there were some statements made by the officers to these witnesses."[5] Notwithstanding the opportunity given to defense counsel as he had requested, he chose not to call any such persons as witnesses leaving unimpeached and uncontradicted Sergeant Brown's testimony. The persons were available to testify since the hearing was conducted at the commencement of the trial. Defendant did not testify at this hearing.

There is only hearsay suggestion in the record that Israel Blicher (victim in count I), Eurales W. Jefferson, George A. Walker, and Oliver W. Miller (victims in counts II, III and IV, respectively) were present at the lineup.

As to the crime charged in count I, witness Blicher's testimony consisted

---

[5]The judge had earlier replied to defendant's trial counsel when the latter had demanded the right to cross-examine or *voir dire* all witnesses who had viewed the lineup prior to their testifying: "I want you to know that in connection with this hearing I did not preclude you and you are not being precluded from calling any witness or witnesses, including any police officers, as to what occurred at the line-up. You are not precluded from calling any persons who identified the defendant who were present at the line-up. You can either call them, and if they are hostile witnesses, the Court would allow you great latitude in examining them, almost tantamount to cross examination."

in part of identifying defendant in court as one of three persons who held up the liquor store at 3816 West Pico Boulevard which he was tending, as one of those who went to the cash register, and as the person who held a gun on him when his wallet containing $125 to $130 was removed from his rear pocket while he was prone on the floor in compliance with a command of the robbers. No reference to any lineup or any lineup identification was elicited on direct examination. No question relating to these matters was asked of Blicher on cross-examination by defense counsel.

On this evidentiary record, we conclude as did the trial judge that even assuming that the failure to seat the public defender in the same room as the witnesses during the lineup violated the *Wade* rules, there is no showing of any exploitation of that illegality which *Wade* itself requires. (*People v. Martin* (1970) 2 Cal.3d 822, 830 [87 Cal.Rptr. 709, 471 P.2d 29].) Blicher's testimony and in-court identification remain untainted.

A parallel situation prevailed as to the in-court identifications of defendant made by witnesses Jefferson, Walker, and Miller with reference to the holdup of Jefferson's liquor store at 4111 West Venice Boulevard (counts II, III and IV). There is even less merit to defendant's claim of a prejudicial *Wade* violation as to these counts. The police responding to a silent alarm activated by Jefferson arrived in time to capture all three defendants in or in close proximity to the locale of the robberies. Codefendant Martin was apprehended while running towards a getaway car waiting on an adjacent parking lot. Codefendant Fowlkes was caught as he sat behind the wheel of the car with the motor running. The vehicle was a 1964 Volkswagen which defendant had borrowed earlier on the date of the robberies from Marilynn Anne Boyko. Fowlkes was a social acquaintance of the defendant from his Chicago days. Defendant himself was taken into custody in the back room of Jefferson's liquor store.

Defendant is an ex-policeman who resigned from the Chicago police force. At the moment of capture he was in shirt sleeves lying on top of the other victims of the robbery whom he had earlier herded to the back room and ordered to lie prone on the floor under threat of death if any of them moved or talked. He claimed that he, too, was an innocent bystander who was at the store to purchase six packs of cigarettes to give to Miss Boyko for use of her car. But two feet from defendant was a rolled-up jacket in which was found a loaded stainless steel .38 caliber Smith & Wesson revolver and a wallet containing Walker's credit card.

Officer Dierx, the first officer to enter the store, testified that he first observed defendant back of the counter near the beer coolers "dodging back and forth" and then saw defendant throw something, "wadded up" and in color similar to the jacket, towards the corner of the room where the jacket

was recovered. As Officer Dierx went in the direction where defendant disappeared, he saw defendant lying on top of the others.

Jefferson and Walker identified defendant in court and testified that defendant had a gun in his hand as he marched Jefferson and the others to the back room. Jimmy Daniel, a witness not shown to have been at any lineup, testified that he was a customer at the liquor store at the time of the holdup and that defendant was the person who held a gun on Jefferson.

Three guns were in evidence: (1) a .45 caliber automatic taken from co-defendant Martin, (2) a .22 caliber automatic found in the Volkswagen, which Jefferson identified as his and which he had kept just below his cash register, and (3) the snub-nose .38 caliber stainless steel or silver revolver found in the pocket of the jacket. The witnesses were shown all three weapons. Witnesses Jefferson and Daniel identified the .38 caliber revolver as the weapon defendant had in his hand. Witness Miller identified the same gun as the one which had been held on him.

Witness Jefferson stated that defendant was wearing the jacket found in the corner of the back room. Walker and Daniel testified that defendant was wearing a jacket when he pulled the gun on each of them. The record also reflects that it had been raining outside.

Witness Walker stated that he took a good look at defendant while defendant was seated in the back seat of a police car right after the robbery when he "looked [defendant] right in the eye."

Thus the evidence from sources clearly independent of any illegality that might have occurred at the lineup adequately establishes defendant's guilt as to all four counts on which he was convicted. (See *People* v. *Martin* (1970) *supra*, 2 Cal.3d 822, 831.) Any *Wade* error was beyond a reasonable doubt non-prejudicial. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed. 2d 705, 711, 87 S.Ct. 824, 828]; see *Gilbert* v. *California* (1967) 388 U.S. 263, 274 [18 L.Ed.2d 1178, 1187, 87 S.Ct. 1951, 1957].)

Citing *People* v. *Chacon* (1968) 69 Cal.2d 765 [73 Cal.Rptr. 10, 447 P.2d 106], defendant's appellate counsel contends that defendant should have been given separate counsel at the lineup. This basis for excluding testimony was not raised either at the lineup or in the trial court, despite the fact that the lineup was conducted about two months after the rendition of the decision in *Chacon*. It may not be raised belatedly upon appeal for the first time under such circumstances. (Cf. *People* v. *Mabry* (1969) 71 Cal.2d 430, 441-442 [78 Cal.Rptr. 655, 455 P.2d 759]; *People* v. *Tolbert* (1969) 70 Cal.2d 790, 804 [76 Cal.Rptr. 445, 452 P.2d 661]; *In re Dennis M.* (1969) 70 Cal.2d 444, 462 [75 Cal.Rptr. 1, 450 P.2d 296]; *People* v. *Fain* (1969) 70 Cal.2d 588, 601, fn. 7 [75 Cal.Rptr. 633, 451 P.2d 65].)

■ Moreover *Chacon* itself recognized that "The right to counsel at trial guaranteed by the Sixth Amendment of the United States Constitution (*Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]) and article I, section 13 of the California Constitution does not include an automatic right to separate counsel for each codefendant. One counsel may represent more than one defendant so long as the representation is effective. (*Powell* v. *Alabama* (1932) 287 U.S. 45, 71 [77 L.Ed. 158, 171-172, 53 S.Ct. 55, 84 A.L.R. 527].)" (69 Cal.2d pp. 773-774.)

### Self-Representation

■ Defendant's further claim that he should have been permitted to discharge his court-appointed lawyer and to represent himself lacks merit. He did not make his request until the first day of trial and then requested a continuance of three months to prepare his defense. His court-appointed counsel was ready to proceed to trial. Defendant had no legal training and the basis for his request was only that he felt he would "possibly" defend himself better than his appointed counsel. If defendant's belated request had been granted the court would have also had to grant his request for continuance (*People* v. *Carter* (1967) 66 Cal.2d 666, 670 [58 Cal.Rptr. 614, 427 P.2d 214]), both delaying his trial and further inconveniencing the witnesses. At the time the request was made, his codefendants and their counsel had given the court no intimation that they might shortly thereafter change their plea from "not guilty" to "guilty." The court remarked that it would necessitate a severance of plaintiff's trial from that of his codefendants or keeping his codefendants in custody during the time defendant prepared himself for his pro se representation. The defendants had then been in custody for five months. Under these circumstances, there was no abuse of discretion in refusing defendant's belated request to act as his own counsel. (*People* v. *Carter, supra,* at p. 672; *People* v. *Thomas* (1962) 58 Cal.2d 121, 131 [23 Cal.Rptr. 161, 373 P.2d 97], appeal dismissed, certiorari denied, 371 U.S. 231 [9 L.Ed.2d 495, 83 S.Ct. 327]; *People* v. *Bonville* (1968) 267 Cal.App. 2d 4, 9 [72 Cal.Rptr. 592]; cf. *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1140-1142 [80 Cal.Rptr. 897, 459 P.2d 225]; *People* v. *Maddox* (1967) 67 Cal.2d 647, 655 [63 Cal.Rptr. 371, 433 P.2d 163].)

### Disposition

The judgment is affirmed as to all counts.

Kaus, P. J., and Stephens, J., concurred.