[Crim. No. 12650. Second Dist., Div. Five. Nov. 15, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. IRVING ADDISON, Defendant and Appellant.

20

Stephen A. Schneider, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Lawrence E. Mindell and Richard D. Huffman, Deputy Attorneys General, for Plaintiff and Respondent.

KAUS, P. J.—On March 11, 1966, the district attorney filed an information charging defendant with grand theft. Five prior felony convictions were also charged. On the same day the public defender was appointed to represent defendant. On March 17 after the denial of a motion under section 995 of the Penal Code the case was set for trial on May 3. On that date the People were ready for trial, but Mr. Fujisaki, a deputy public defender, moved for a continuance to May 23 on the

grounds that Mr. Parks, the deputy to whom the case had been assigned, was ill. The deputy district attorney pointed out that the People's witnesses were present, but stated that in view of Mr. Parks' illness, he did not see how he could oppose the motion for continuance. Mr. Fujisaki then indicated to the court that the defendant wanted to address it. Defendant moved the court to be permitted to proceed in propria persona. The following then took place:

"THE COURT: Is this going to be a jury trial or a court trial? THE DEFENDANT: Yes, jury trial. THE COURT: And do you know how to impanel a jury? THE DEFENDANT: All I can do is the best I can. THE COURT: Yes, but do you know how to impanel a jury? THE DEFENDANT: Well, I know how to question them and find out if I want them on the jury, yes. THE COURT: And that is all you know about impaneling a jury? THE DEFENDANT: Well, I understand I have certain peremptory challenges and I have the right to question them and to accept them or deny them. THE COURT: And how much do you know about the rules of evidence? THE DEFENDANT: I know up to the point of whether evidence is admissible—in other words, there is portions of this trial where this is going to be one of the points, admissibility of evidence. THE COURT: Let's see, what do you know about the hearsay rule in evidence? THE DEFENDANT: The hearsay? THE COURT: Yes, sir. THE DEFENDANT: Well, this can't be used. It has to be direct testimony. THE COURT: Well, aren't there some exceptions to the hearsay rule? THE DEFENDANT: I'm not a lawyer, your Honor. I don't know. THE COURT: I understand that. The reason I am asking all of this is I have to determine whether to permit you to represent yourself or not. THE DEFENDANT: I understand that. THE COURT: And in permitting you, I have to determine whether you would be capable — THE DEFENDANT: Yes, sir. THE COURT: — of representing yourself. And that is the only reason I am asking these questions. If I feel that you are capable of representing yourself and there would be no problem, I would let you go through with representing yourself. But if I feel that you are not, then I feel I am duty bound in my conscience not to permit you to represent yourself. THE DEFENDANT: I understand, but I would like to reiterate one point. If the man has had this case for seven or six weeks and hadn't done anything yet — THE COURT: You don't know what he has done. All you know is he has seen you for ten minutes. THE DEFENDANT: Right. THE COURT: You don't know what else he has done in the case. THE DEFENDANT:

I know at the time that I saw him he hadn't read the transcript, and I asked him for a copy of the transcript and he said, 'Well, I'll give it to you Tuesday.' So there has been no collaboration between he and I as far as I can see. I am not trying to run the man down, but I can't see that three weeks from now it is going to be any better. THE COURT: Okay. Your motion to relieve the Public Defender and permit you to represent yourself is denied. . . .''

The court and the two attorneys present then returned to the matter of a continuance. During that discussion the court twice asked defendant whether he waived his right to go to trial within 60 days from the date of the filing of the information (Pen. Code, § 1382). Each time defendant emphatically said that he did not waive.[1]

The attorneys then advised the court that Mr. Parks was expected back before the 60-day period would elapse on May 16.[2] Then there followed some discussion about the fact that section 1382 permits a trial beyond the 60-day period if ''good cause to the contrary is shown.'' The only ''good cause'' suggested was a statement by the deputy district attorney to the effect that Mr. Parks, the deputy public defender, had a full calendar. The court then continued the case to May 23.

Trial to a jury actually started on May 24. On June 1 the jury returned with a verdict finding defendant guilty of grand theft and also finding all five prior felony convictions to be true. On June 21 defendant was placed on probation for a period of five years. One of the conditions of probation was that he spend one year in the county jail. The appeal is from the order granting probation.

On appeal, appointed counsel raises several issues, one of them being a violation of defendant's right to a speedy trial as defined in section 1382 of the Penal Code. If he is correct on that point, other issues need not be considered.

Although the trial court's denial of defendant's motion to be permitted to represent himself is not attacked as such by defense counsel, the Attorney General's brief shows that the

---

[1]''THE COURT: . . . Do you waive time for trial, Mr. Addison? THE DEFENDANT: No. . . . THE COURT: Mr. Addison, you say you do not want to waive time and continue this matter? THE DEFENDANT: Yes, sir. THE COURT: I take it, then, that you want to go to trial today? THE DEFENDANT: Yes. . . .''

[2]Six days of the delay were chargeable to defendant who had, on March 11, requested that his plea be continued to March 17. (*People* v. *Burch*, 196 Cal.App.2d 754, 761-762 [17 Cal.Rptr. 102]; *People* v. *Harrison*, 182 Cal.App.2d 758 [6 Cal. Rptr. 345]; *People* v. *Martinelli*, 118 Cal.App.2d 94, 96 [257 P.2d 37].)

People realize that the correctness of that denial is the determinative issue on this appeal. If the court should have permitted defendant to proceed in propria persona, no cause whatever was shown for not starting the trial on May 3 when everybody was ready.

The right of a defendant in a criminal case to represent himself is recognized by our Constitution (Cal. Const., art. I, § 13) and case law (*People* v. *Harmon,* 54 Cal.2d 9, 15 [4 Cal.Rptr. 161, 351 P.2d 329]). As a constitutional right it is peculiar in that, as a condition precedent to its exercise, the defendant must prove to the satisfaction of the court that he is competent to waive the right to counsel. ". . . although every defendant in a criminal case has the constitutional right to represent himself if he so elects (Cal. Const., art. I, § 13; *People* v. *Harmon* (1960) 54 Cal.2d 9, 15 [4 Cal.Rptr. 161, 351 P.2d 329]; *People* v. *Mattson* (1959) 51 Cal.2d 777, 788-789 [336 P.2d 937]; *People* v. *Shields* (1965) 232 Cal.App.2d 716, 722 [43 Cal.Rptr. 188]; *People* v. *Shroyer* (1962) 203 Cal.App.2d 478, 482 [21 Cal.Rptr. 460]), before his waiver of counsel may be accepted the trial court is duty bound to determine his competency to represent himself. (See, e.g., *In re Johnson* (1965) 62 Cal.2d 325, 335-337 [42 Cal.Rptr. 228, 398 P.2d 420], and cases there cited.) As stated in *Johnson* (at p. 335), ' "the court cannot accept a waiver of counsel from anyone accused of a serious public offense without first determining that he 'understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, or the punishments which may be exacted [quoting from *In re James* (1952) 38 Cal.2d 302. 313 [240 P.2d 596]].' " ' The inquiry into the defendant's ability to defend himself fulfills a two-fold purpose. It serves not only to determine his competence, but also to alert him to the seriousness of the action he contemplates as well as the pitfalls he may expect to encounter." (*People* v. *Carter,* 66 Cal.2d 666, 672 [58 Cal.Rptr. 614, 427 P.2d 214].)

The dilemma in which trial courts find themselves because of the requirement that before permitting a defendant to represent himself a determination must be made that the waiver of the right to counsel be "intelligent and understanding" (*Carnley* v. *Cochran,* 369 U.S. 506, 513 [8 L.Ed.2d 70, 75, 82 S.Ct. 884]; *Johnson* v. *Zerbst,* 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357]; *In re Johnson,* 62 Cal.2d 325. 333-334 [42 Cal.Rptr. 228. 398 P.2d 420]) is apparent. Cunning criminals consistently take advantage of

it and all too often the demand for self-representation becomes a ''heads I win tails you lose'' proposition. If the trial court too readily accedes to it an appellate court will find the waiver of the right to counsel to be ineffectual. Conversely, if the court leans over backwards in protecting the latter right, it runs the risk of depriving defendant of the former.

In recognition of this dilemma, appellate courts go far in deferring to the trial court's discretion (*People* v. *Carter, supra,* p. 672), but we find no authority that permits the trial court to deny a defendant the right to represent himself simply because he does not know as much law as an attorney. The proper test was announced in *In re Connor,* 16 Cal.2d 701, 709 [108 P.2d 10] : ''A defendant who, *with an intelligent conception of the consequences of his act,* declines the aid of counsel prior to or at the commencement of his trial, is not entitled thereafter to interrupt and delay the hearing at any stage he deems advantageous merely to interpose a demand for legal assistance.'' (Italics added.) This statement was quoted with approval in *People* v. *Thomas,* 58 Cal.2d 121, 131-132 [23 Cal.Rptr. 161, 373 P.2d 97].

An ''intelligent conception of the consequences'' of proceeding without counsel is not negatived by a lack of knowledge of particular rules of law or procedure. If the defendant wants to venture into the unknown, he must be allowed to do so, if he is aware of the dangers that lurk therein. He need not demonstrate that he can meet them.[3]

In imparting to the defendant the ''intelligent concept of the consequences'' the ''bar examination'' of the type given defendant here has its proper place. It conveys to him—and makes a record thereof—that he may be making a bad mistake.[4] But, when all of that is done and when the other requirements for an effective waiver of counsel are met

[3]The truth of the matter is that there are many cases so utterly hopeless from the defendant's point of view that—at least on the question of guilt or innocence—there is nothing the most competent attorney can do for him. If he decides that his only chance is the ''hope that the jury will be sympathetic toward a layman who pits himself against the Goliath of the state'' (Note: *The Right of an Accused to Proceed Without Counsel,* 49 Minn.L.Rev. 1133), whence comes the right of the court to deprive him of his choice?

[4]An alternative method is suggested by *People* v. *Mattson,* 51 Cal.2d 777, 794 [336 P.2d 937]. There, the Supreme Court, in recognition of the fact that the trial judge's channel of communication with the defendant may not be clear because of the latter's privilege against self-incrimination, suggests that an attorney could be assigned to consult privately with defendant concerning the latter's need for representation.

the defendant must be permitted to be the master of his own fate. ''The foregoing sections accord the accused not only a right to counsel but also a right to represent himself if he so elects. Except in certain situations not here pertinent, the court cannot force a competent defendant to be represented by an attorney. (*People* v. *Rose* (1919) 42 Cal.App. 540, 553[7] [183 P. 874]; see also *Adams* v. *United States* (1942) 317 U.S. 269, 279 [87 L.Ed. 268, 274-275, 63 S.Ct. 236, 143 A.L.R. 435].)'' (*People* v. *Mattson, supra,* pp. 788-789, footnote omitted.)[5]

 There are certain cases such as *People* v. *Lee,* 249 Cal.App.2d 234, 243 [57 Cal.Rptr. 281]; *People* v. *Shields,* 232 Cal.App.2d 716, 722 [43 Cal.Rptr. 188] where one of the reasons given for holding that the trial court was correct in refusing to permit a defendant to represent himself, is the defendant's lack of legal knowledge. However, in no case of which we are aware was such lack of learning declared to be sufficient by itself to justify the denial of the right to self-representation. To the extent that such cases contain at least dicta to the effect that lack of legal knowledge is a sufficient basis for not permitting a defendant to proceed in pro. per., they are irreconcilable with *People* v. *Mattson, supra,* 786-787 where the court notes that Mattson ''had some knowledge of law, but either did not understand or refused to recognize some rules of procedure, particularly rules of evidence.''[6]

 We conclude that the trial court erroneously denied defendant the right to represent himself.

That being determined, how do we dispose of this case? All we have held so far is that lack of knowledge of the law cannot be used as the sole basis for saying that an attempted waiver of counsel is ineffective. Theoretically there may be

---

[5] ''A defendant may waive counsel (*People* v. *Mattson, supra,* 51 Cal.2d 777), and since a court usually cannot compel a mentally competent defendant to accept representation against his will (*id.,* pp. 788-789; *People* v. *Rose,* 42 Cal.App. 540, 553-554 [183 P. 874]) it follows that obdurate insistence by such a defendant must be recognized. The court is, of course, under an obligation to explain to a defendant who desires to represent himself the difficulties he will encounter, and to assure that he understands the risks of that course. It is not, however, required to demand that such a defendant demonstrate or possess 'either the acumen or the learning of a skilled lawyer' (*People* v. *Linden,* 52 Cal.2d 1, 18 [338 P.2d 397].)'' (*People* v. *Terry,* 224 Cal.App.2d 415, 418 [36 Cal.Rptr. 722].)

[6] We are aware that the issue decided by the Supreme Court in *Mattson* was not whether he was competent to waive counsel but whether he was entitled to have his case presented both by himself and by appointed counsel ''alternating at defendant's pleasure.'' It seems to us, however, that the very basis for that discussion is the court's implicit and explicit assumption that Mattson was competent to represent himself.

other factors—never inquired into by the trial court—which would have made it impossible for this defendant to waive that right. If such a possibility were present the proper disposition of this appeal would be a troublesome question. As it stands, however, we are not faced with the problem. The ruling of May 3, 1966, did not silence defendant for the remainder of the trial. We are quite convinced from the record before us that he showed enough intelligence and competence to pass any proper inquiry by the court with flying colors. He was therefore entitled to represent himself and, acting as his own attorney, to go to trial on May 3 when everybody else was ready.

The question remains whether under the rule of *People* v. *Wilson,* 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452] he is now required to show prejudice from the denial of his rights under section 1382.[7] That case held that unless the defendant attempts to protect his right to a speedy trial by an appropriate motion to dismiss and petition for a writ in the Court of Appeal, followed by a petition for a hearing in the Supreme Court (*ibid.,* p. 150) the violation of section 1382, though reviewable on an appeal from a later judgment, is subject to the provisions of article VI, section 13, (then 4½) of our Constitution.[8]

We do not think that *People* v. *Wilson, supra,* is applicable where the defendant has been improperly denied his right to represent himself. A defendant in a criminal case should not be put in the position of having to safeguard his record in

---

[7]This is an entirely different question from the one which arises where the right to self-representation is erroneously denied and the case proceeds to trial on time. Cases such as *People* v. *Shroyer,* 203 Cal.App.2d 478, 483 [21 Cal.Rptr. 460]; *People* v. *Marcus,* 133 Cal.App.2d 579, 583 [284 P.2d 848]; and *People* v. *Mayfield,* 85 Cal.App. 77, 79 [259 P. 75] hold that this type of error is subject to the saving graces of what is now article VI, section 13 of the California Constitution.

[8]It is possible to read *People* v. *Wilson, supra,* as standing for the proposition that even if the trial and appellate courts erroneously fail to order a dismissal before trial, to which dismissal the defendant is entitled and the issue of a violation of section 1382 is thereafter raised on appeal from a judgment of conviction, prejudice is not presumed and must be affirmatively shown. We do not so read the case. It would be most uncharacteristic of our Supreme Court to award a bonus for error. The opinion in *Wilson* carefully points out that when Wilson sought his writ of mandate in the Court of Appeal, the superior court file erroneously recited that a certain continuance had been at his request and that he made no effort to correct the record. Nor did he ask for a hearing in the Supreme Court. (*Ibid.,* p. 150.) In footnote 1 to Justice Peters' dissent it is stated that the petition for mandate alleged that there had been no waiver, but it is entirely possible that the Court of Appeal ordered the superior court file lodged with it before denying the writ.

propria persona, when the trial court has just denied him the right to proceed in that fashion.[9]

The judgment is reversed and the case is remanded to the superior court with instructions to dismiss the proceedings. (*People* v. *Clark,* 62 Cal.2d 870, 888 [44 Cal.Rptr. 784, 402 P.2d 856].)

Hufstedler, J., and Stephens, J., concurred.

. A petition for rehearing was denied on December 7, 1967, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied January 11, 1968. Mosk, J., and Burke, J., were of the opinion that the petition should be granted.

---

[9]As a matter of fact defendant did file a petition for a writ of habeas corpus with the Court of Appeal on May 13, 1966. It was denied on May 16. There was no petition for hearing by the Supreme Court. At the trial, on May 24, 1966, the defendant personally claimed that the court had no ''jurisdiction'' to proceed in view of the alleged violation of section 1382. He told the trial court of the denial of his petition for a writ by the Court of Appeal and stated that he would ''like to put in for a rehearing [*sic*] before the California Supreme Court.'' The following discussion then took place: ''THE COURT: You do whatever you want. I don't care. THE DEFENDANT: Do I have to do this afterward or before? THE COURT: I have no advice to give you. Talk to your attorney about it. THE DEFENDANT: My attorney, as far as I am concerned, I am not getting any advice at all. THE COURT: I am not going to become your attorney by advising you whether you have to put it in before or after. THE DEFENDANT: All right. Now, there is another point. I want to get it all down now so I get it off my chest. THE COURT: Good . . .'' If we are correct in our holding that under the circumstances of this case *People* v. *Wilson* is distinguishable, we think it is immaterial whether defendant attempted to do anything by himself or whether he did everything necessary to protect his rights.