[Crim. No. 15381. Second Dist., Div. Four. June 25, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE EDWARD ARMSTRONG, Defendant and Appellant.

Samuel P. Delug, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

DUNN, J.—By information filed January 10, 1968, appellant was charged with burglary, a felony, accomplished December 16, 1967, at a gasoline service station in Los Angeles. When called for trial March 22, 1968, defendant waived a jury trial, and following nonjury trial he was found guilty of burglary in the second degree (Pen. Code, §§ 459,

460) and sentenced to state prison. Appellant's sole contention on appeal is that the trial court erred in finding him competent to represent himself in propria persona.

The facts surrounding the crime are simple. At 3 o'clock in the morning of December 16, 1967, Los Angeles city police Officer Ripley heard a police broadcast that a burglary was then in progress at a gasoline station located at New Hampshire and Santa Monica Boulevard in Los Angeles. He drove there, got out of his vehicle and walked toward the station. When he turned the beam of his flashlight on it he saw defendant standing inside and cabinets, drawers and papers strewn about. Appellant broke out the glass window in the door and ran off, the officer pursuing him and firing several shots in an effort to stop him. He was unsuccessful and returned to his car radio, described appellant's physical appearance and clothing and requested arriving police units to seal off the neighborhood, which they did. A search for appellant ensued and another officer found him hiding, lying prone alongside a row of bushes. The broadcast description matched appellant, who was arrested. After being advised of his constitutional rights he said, "You've got me cold" and "I don't know why I did it." Tools stolen from the gasoline station were found in his possession.

When arraigned in the superior court and again at the time of plea, appellant was represented by the public defender, appointed to do so by the court. When his case was called for trial on March 7 he was still so represented but, without stating substantially any reason therefor, he orally moved the court for an order relieving the public defender as counsel and allowing appellant to represent himself.[1] This he was permitted to do.

On this same occasion a number of written motions filed by appellant also were ruled on by the court. These were: to

---

[1] "THE COURT: The People against George E. Armstrong.

MISS TROWBRIDGE [deputy public defender]: This is a motion on behalf of the defendant, your Honor, to relieve the Public Defender and allow the defendant in this matter to represent himself. He is ready for trial today.

Is that correct, Mr. Armstrong?

THE DEFENDANT: Yes, ma'am, but I would like to change that over.

THE COURT: You would like to do what?

THE DEFENDANT: I would like to change that.

THE COURT: All right. What are you asking at this time?

THE DEFENDANT: I would like to have the Public Defender assist me in parts of this.

MISS TROWBRIDGE: Well, I believe I have explained to Mr. Armstrong that he is either represented by an attorney or he is not represented by

dismiss the public defender as his attorney (already granted on oral motion), to dismiss the charges against appellant (withdrawn by appellant), for an order to produce evidence (granted as to "mug shots" and withdrawn by appellant as to other items) and to reduce bail (granted). Oral motions also were made by appellant for his release from custody "O.R." (own recognizance—denied) and for a continuance of the trial (granted and trial continued to March 22).

The trial took place March 22 and March 25 and produced the facts already cited. At the outset, the court again interro-

---

an attorney, and as an attorney I am not in a position where I can really assist him.

You understand that, Mr. Armstrong?

THE DEFENDANT: I would go the first way.

MISS TROWBRIDGE: Then you would rather represent yourself?

THE DEFENDANT: Yes.

THE COURT: Mr. Armstrong, what makes you feel that you are capable of representing yourself in a matter as serious as this?

THE DEFENDANT: Well, because first of all I have had time to study the case a little bit more, and I have also had some knowledge of law through schooling, through three years in the military police, working with the Judge Advocate's office pretty heavy.

THE COURT: Where did you study law, Mr. Armstrong?

THE DEFENDANT: Santa Maria Junior College, Santa Maria, California.

THE COURT: Is this some kind of a commercial law course?

THE DEFENDANT: No, ma'am. This is a regular common law one.

THE COURT: You realize what you would be giving up if you represent yourself instead of having an attorney to represent you?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right, what rights would you be giving up?

THE DEFENDANT: First of all, I would be giving up certain rights of legal running, that I wouldn't be able to give—get all the testimony probably I wanted, because I wouldn't have the facilities to do it with, and I would get a—give up the privilege of certain communications with the—on my crime itself.

THE COURT: Well, other than the fact that you feel you know more about the facts of this case than anyone else, and quite probably you do, why do you wish to represent yourself instead of having the Public Defender represent you?

THE DEFENDANT: Because I don't feel she would have enough time to spend on this case like I would, your Honor.

THE COURT: How far did you go in school, Mr. Armstrong?

THE DEFENDANT: To the 15th grade, your Honor.

THE COURT: You realize what the penalty is if you are convicted of the offense?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right, what is it?

THE DEFENDANT: Up to fifteen years.

THE COURT: You understand if you undertake this that the Court is going to presume you know what you are doing, and you are not going to have the Court try the case for you.

Do you understand that?

THE DEFENDANT: No, ma'am— Yes, ma'am.

THE COURT: Very well, Mr. Armstrong, the Court will let you represent yourself in this matter."

gated appellant concerning his desire to defend himself.[2] Appellant objected to questions asked by the prosecution and vigorously cross-examined the People's witnesses, consuming nearly 60 pages of transcript in all. He attempted to impeach them by use of the preliminary transcript and by use of his own and the prosecution's exhibits. He testified in his own behalf, called three witnesses in corroboration, prepared and used a model of a window as demonstrative evidence, argued his case at the conclusion of the trial and otherwise demonstrated an understanding of the charge against him, of the procedure followed and an ability to conduct his own defense. Whenever he seemed uncertain, the trial court was quick to assist him with explanation and guidance. His only problem was that the proof of his guilt was overwhelming and he was so found by the court.

From reference to earlier footnotes it will be observed that appellant had completed high school and was in his third year of college, had studied common (not "commercial") law in college, and had spent three years in the Military Police work-

---

[2] THE COURT: The People against George E. Armstrong.

THE DEFENDANT: Yes, ma'am.

THE COURT: Mr. Armstrong, it is my recollection that the Court allowed you to represent yourself in this matter. That was your desire—

THE DEFENDANT: Yes, ma'am.

THE COURT: —the last time the matter was before the Court, which was March 7th.

Is it still your desire to represent yourself in this matter?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you feel that you have sufficient knowledge based upon your education that you can handle this matter yourself?

THE DEFENDANT: Yes, ma'am.

THE COURT: You realize, of course, that you are giving up the right to have somebody represent you who does have legal training?

THE DEFENDANT: Yes, ma'am.

THE COURT: You must realize also that you will be presumed to know how to handle the case and what the law is. The Court is not going to try the case for you.

Do you understand that also?

THE DEFENDANT: Yes, ma'am.

THE COURT: I believe you told the Court that you had, was it 14 years of schooling?

THE DEFENDANT: Fifteen.

THE COURT: Fifteen years of schooling.

THE DEFENDANT: Or more.

THE COURT: Some college then?

THE DEFENDANT: Some, yes, ma'am, three years, and I'm still going.

THE COURT: All right. As long as it is still your desire to represent yourself the Court will allow you to do so. You have a constitutional right to do so if the Court feels you are able to conduct your defense.

I believe you indicated that you wished to waive a jury and have the matter tried before this Court; is that right?

THE DEFENDANT: Yes, ma'am."

ing with the Judge Advocate General's office. He presented and argued written and oral motions, obtained a continuance as requested and secured a reduction of bail. During the argument to be released "O.R." or for reduction of bail it came out that appellant had been tried in 1955 for burglary in Detroit and convicted of grand theft in 1966, resulting in his receiving a one-year suspended sentence and three years probation. He was on probation at the time of the present trial. The trial court concluded, however, that there was no record of a felony conviction. All of these matters demonstrate appellant was not an innocent or ignorant lamb in the field of criminal law. ▉▉ Though he now professes erroneous deprivation of his constitutional right to be represented by counsel there is also a constitutional right to represent oneself in a criminal case.

His claim of improper waiver of counsel, because of his now professed ignorance of the hazards thereof, is somewhat belied by the record following his conviction. He was found guilty by the court on March 25, 1968 and on April 5 filed a written Notice of Motion for New Trial. This is supported by a statement, an affidavit and a memorandum of points and authorities, each dated April 2, 1968, just seven days afterwards. The method of presentation, the familiarity with cases cited and the time obviously spent in locating them leads one to suspect appellant was quite familiar with the rules of law for a period some time before April 2 and very probably on March 22d when he waived representation by counsel for the second time. Nevertheless, we decide this case without reference to suspicions so aroused and solely upon the record before us.

▉▉ The Constitution of California (art. I, § 13) guarantees to an accused the right ". . . to appear and defend, in person and with counsel"; Penal Code section 686, subdivision 2, reiterates it. The phrase has been interpreted to mean: in person *or* by counsel; thus, there is no right to counsel and also personally to participate in the trial. *People* v. *Mattson* (1959) 51 Cal.2d 777 [336 P.2d 937]; *People* v. *Lopez* (1963) 60 Cal.2d 223, 255 [32 Cal.Rptr. 424, 384 P.2d 16]. The record (see footnote 1) shows that appellant, at the time of waiver first requested the trial court to appoint the public defender to *assist* appellant to try his own case, a request that was declined. While not complained about by appellant as a point on his appeal, we note that the court's ruling was proper under *People* v. *Mattson, supra; People* v. *Ashley* (1963) 59 Cal.2d 339, 361 [29 Cal.Rptr. 16, 379 P.2d 496]; *People* v.

*Lopez, supra,* 60 Cal.2d at p. 255 and *People* v. *Bourland* (1966) 247 Cal.App.2d 76, 83 [55 Cal.Rptr. 357].

■ There is no doubt that an accused, while entitled to the constitutional right of representation by counsel, also has a constitutional right to refuse counsel and to represent himself. ■ This latter right is not an unlimited one. Thus, the court must first make inquiry into his competence, and be reasonably satisfied of it, before accepting the accused's waiver of counsel. "Competence" means more than a minimum of mental awareness and capability, however, and involves "an intelligent conception of the consequences of his act." *In re Connor* (1940) 16 Cal.2d 701, 709 [108 P.2d 10]; *People* v. *Thomas* (1962) 58 Cal.2d 121, 131-132 [23 Cal.Rptr. 161, 373 P.2d 97]; *People* v. *Carter* (1967) 66 Cal.2d 666, 669-670 [58 Cal.Rptr. 614, 427 P.2d 214]; *People* v. *Addison* (1967) 256 Cal.App.2d 18, 24 [63 Cal.Rptr. 626]; *People* v. *Ruiz* (1968) 263 Cal.App.2d 216, 226 [69 Cal.Rptr. 473].

■ The determination that an accused is or is not competent ". . . involves an exercise of discretion by the trial judge which, in the absence of a showing of abuse, will not be disturbed on appeal." *People* v. *Carter, supra,* 66 Cal.2d at p. 672.

*In re Johnson* (1965) 62 Cal.2d 325 [42 Cal.Rptr. 228, 398 P.2d 420], was cited approvingly in *Carter.* In *Johnson,* appellant was arrested and arraigned on five misdemeanor complaints arising from a number of past Vehicle Code violations. While he was informed of his right to have counsel, the Supreme Court found that he had never waived such right. Indeed, we note he was never asked if he waived the right or did he ever so state. He was unrepresented at the arraignment and there pled "guilty" to all charges. He was sentenced without any attorney present to represent him. Under these facts the court observed (p. 335):

"[13] Moreover, it is settled that 'The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, *upon the particular facts and circumstances surrounding that case,* including the background, experience, and conduct of the accused.' (Italics added.) (*Johnson* v. *Zerbst* (1938) *supra,* 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357]; accord, *People* v. *Chesser* (1947) *supra,* 29 Cal.2d 815, 822 [178 P.2d 761, 170 A.L.R. 246] [4].) [14] Manifestly that determination must be made *before* any plea—guilty or otherwise—is

accepted by the trial court, or the right to counsel loses most of its meaning and effectiveness.[7] [Footnote omitted.] [15] The making of this determination in a timely fashion is therefore the 'serious and' weighty responsibility' of the trial judge. (*Johnson* v. *Zerbst* (1938) *supra,* 304 U.S. 458, 465 [82 L.Ed. 1461, 1467, 58 S.Ct. 1019, 146 A.L.R. 357].) As we said in *Chesser* (at pp. 821 [1]-822 [5] of 29 Cal.2d), [10b] 'The fact· that defendant pleaded guilty is not conclusive. . . . In order for a trial judge to determine whether there has been a competent and intelligent waiver of counsel, he .must first ascertain whether the defendant clearly understands the nature and effect of his waiver.' [16] More ·particularly, 'the court cannot accept a waiver of counsel from anyone accused of a serious public offense without first determining that he "understands the nature of the charge, the elements of the offense, the pleas and defenses which may be· available, or the punishments which may be exacted." ' (*In re James* (1952) 38 Cal.2d 302, 313 [9] [240 P.2d 596].)"

*People* v. *Powers* (1967) 256· Cal.App.2d 904 [64 Cal.Rptr. 450] and *People* v. *Addison, supra,* each involved claimed error by the trial court in *refusing* to permit an accused to waive counsel. (While there is a distinction between the right to waive counsel and the right to have counsel, such rights are closely inter-related.) In *Powers* appellant advised the trial court that he was unable to understand the mechanics or consequences of the trial and was mentally incapable of representing himself. The trial court's refusal of a waiver was affirmed. In *Addison* it was held that the trial court abused its discretion in refusing to accept the waiver, no acceptable basis for such refusal appearing in the record, which reflected only that appellant had a lack of legal knowledge. Inter alia the court made these observations (pp. 24-25) :

"[6] An 'intelligent conception of the consequences' of proceeding without counsel is not negatived by a lack of knowledge of particular rules of law or procedure. If the defendant wants to venture into the unknown, he must be allowed to do so, if he is aware of the dangers that lurk therein. He need not demonstrate that he can meet them.[3] [Footnote omitted.]

"[7] In imparting to the defendant the 'intelligent concept of the consequences' the 'bar examination' of the type· given defendant here has its proper place. It conveys to him—and makes a record thereof—that he may be making a bad mistake.[4] [Footnote omitted.] But, when all of that is done and

when the other requirements for an effective waiver of counsel are met the defendant must be permitted to be the master of his own fate. 'The foregoing sections accord the accused not only a right to counsel but also a right to represent himself if he so elects. Except in certain situations not here pertinent, the court cannot force a competent defendant to be represented by an attorney. (*People* v. *Rose* (1919) 42 Cal.App. 540, 553 [7] [183 P. 874] ; see also *Adams* v. *United States* (1942) 317 U.S. 269, 279 [87 L.Ed. 268, 274-275, 63 S.Ct. 236, 143 A.L.R. 435].)' (*People* v. *Mattson, supra,* pp. 788-789, footnote omitted.)[5] [Footnote omitted.]"

 Sufficient familiarity with the consequences of a waiver may be determined from all of the facts, each case being different. *People* v. *Kranhouse* (1968) 265 Cal.App.2d 440, 447 [71 Cal.Rptr. 223]. Thus, in *People* v. *Green* (1961) 191 Cal.App.2d 280 [12 Cal.Rptr. 591] a waiver was upheld where appellant several times stated awareness that he could be represented by the public defender but wanted to represent himself and showed he was familiar with (p. 284) : ". . . the nature of the charges and familiar with legal terminology, as he asked the court to 'O.R.' him. . . ."

 Here, the complaint against appellant raised simple issues and he had the advice of counsel at the time of arraignment and plea. His answers to the court's questions at the time of waiver clearly indicate an understanding of the charge, the serious consequences of a finding of guilt and, above all, a mental competence sufficient reasonably to satisfy the requirements of a trial court. "On appeal the defendant has the burden of establishing that he did not competently and intelligently waive this right." *People* v. *Kranhouse, supra,* 265 Cal.App.2d at page 447.

 While, where a constitutional right is involved, an appellate court must draw its own conclusions from the facts disclosed in the record, it must be remembered that the trial court is in a better position than an appellate court to form impressions of witnesses and to draw conclusions therefrom. A cold transcript may disclose a question followed by an intelligent answer but it frequently does not reflect the hesitance of the witness, his groping for words or ideas or the time spent on the witness stand before answering. The reverse also is true and a witness may immediately and alertly respond though an appellate court is ignorant of that fact. His manner may be evasive though his words are not. His eyes may search a

blackboard chart for "facts" purportedly known to him; he may look to his counsel or spectators behind the rail for guidance or approbation of his answer; he may stammer nervously under the strain of uncertainty, mumble in embarrassment when faced with contradictions in his testimony—all this, and more, may be observed by the trier of fact but none of it ordinarily is conveyed to an appellate court reviewing the record.

Thus, it is only where a ". . . trial court has applied an improper standard, or where the defendant's general competency [or incompetency] appears without question, that a court on appeal can ignore the ultimate conclusion of the trial court." *People* v. *Glaser* (1968) 265 Cal.App.2d 849, fn. 2, p. 853 [71 Cal.Rptr. 706].

▪▪▪ We find the trial court here did not abuse its discretion in accepting appellant's waiver of his right to counsel. The California decisions relied on by appellant are all distinguishable. Thus: *People* v. *Williams* (1967) 252 Cal.App.2d 147 [59 Cal.Rptr. 905] (the public defender disqualified himself because of conflicting interest; trial court neglected to proffer appointment of private counsel); *People* v. *Moss* (1967) 253 Cal.App.2d 248 [61 Cal.Rptr. 107] (same situation, and denial of continuance held prejudicial); *People* v. *Cummings* (1967) 255 Cal.App.2d 341 [62 Cal.Rptr. 859] (no inquiry into defendant's competence); *People* v. *Addison, supra,* 256 Cal.App.2d 18 (already distinguished on the ground appellant's only demonstrated incompetence involved his lack of legal knowledge); *People* v. *Maddox* (1967) 67 Cal.2d 647 [63 Cal.Rptr. 371, 433 P.2d 163] (improper refusal to permit defendant to proceed in pro. per. and, when permission granted, refusal to grant continuance held prejudicial); none of these cases is directly in point, for the reasons indicated.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied July 10, 1969.