[Crim. No. 15244. Second Dist., Div. Five. July 9, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD R. OCHOA, Defendant and Appellant.

## COUNSEL

Bruce A. Toor, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James L. Markman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—Defendant was charged with and convicted of possession of heroin. (Health & Saf. Code, § 11500.) After his motion for a new trial was denied, criminal proceedings were suspended and a petition for commitment under the provisions of section 3051 of the Welfare and Institutions Code was filed. Pursuant to section 1237 of the Penal Code, as it then read, defendant properly appealed from the order denying a new trial.

Only two issues of substance are involved in the appeal. One is that the trial court improperly denied defendant's request, frequently voiced, that he be permitted to represent himself. The other is that the contraband was seized after an illegal arrest. It will be convenient to discuss the issues in inverse order.

In the morning of July 31, 1967, defendant was walking in an easterly direction on a street in the City of San Fernando. Lieutenant Sherwood and Officer Barbarick of the San Fernando Police Department saw defendant from their car. A week earlier Sherwood had been told by an informer—apparently by telephone—that defendant was dealing in narcotics at the corner of O'Melveney and Kalisher. Information from the informer in question had, on other occasions, resulted in five arrests and "approximately five" convictions. Although Sherwood had tried to get the informer's name, he had refused to furnish it. Sherwood had told Barbarick about information that had been received.

When Barbarick saw defendant on the street he stopped, backed up his car and approached defendant. As he did so defendant shoved his hand into his right trouser pocket quite rapidly. Barbarick then noticed that the pupils of defendant's eyes were constricted. He placed his hand over defendant's eyes "to shadow the pupil area." He noticed that the pupils did not react and remained constricted. He then placed defendant under arrest apparently for a violation of section 11721 of the Health and Safety Code.[1] A search of

---

[1]Section 11721 of the Health and Safety Code reads in pertinent part as follows: "No person shall use, or be under the influence of narcotics, excepting when administered by or under the direction of a person licensed by the State to prescribe and administer narcotics. It shall be the burden of the defense to show that it comes within the exception."

defendant's person produced several balloons at least one of which contained 0.2 grams of "a tan powder which was found to contain heroin."

Barbarick had had a certain amount of formal training on narcotics, had made over a thousand arrests of persons who he "felt were under the influence of narcotics" and had testified in court on several hundred occasions, many times as an expert. His observation of defendant indicated to him that he had taken an "opiate derivative" into his system.

On these facts we do not have the slightest doubt that the officer was within his rights in arresting and searching defendant, and we would be belaboring the obvious if we cited authority for the proposition. We assume that when the officers first saw defendant they had no right to arrest him on the basis of the information they had received which was arguably somewhat stale. We also accept that, without more, Barbarick would not have been privileged to shade defendant's eyes. While having police officers approach one on the street and conduct such examinations in public is not as serious an intrusion as a pat down for weapons, it can be, to say the least, embarrassing. We hold, however that the intervening observations of the constricted pupils furnished the officer with an adequate basis for subjecting defendant to this indignity.

The question whether the court erroneously refused to permit defendant to represent himself is far more serious. Intertwined with that problem is another, namely whether defendant was deprived of his right to a speedy trial, as embodied in section 1382 of the Penal Code.

The information was filed on November 20, 1967. Trial was set for January 16, 1968. The public defender had been appointed to represent defendant at his arraignment on November 21, 1967. On January 16 defendant appeared with a deputy public defender. Defendant himself apparently had prepared a petition relating to a motion to suppress evidence. It was denied. The deputy and the prosecutor then submitted a motion under section 1538.5 of the Penal Code on the transcript of the preliminary hearing which contained the facts recited earlier in this opinion. The ruling was continued to the next day when, after strenuous argument by the defense, the motion was denied. That ruling was made by Judge Farley. The case was then transferred to Judge Breitenbach's court for trial. Proceedings in the court resumed on January 18. Defendant then, for the first time, moved to be permitted to represent himself. It appeared that the case would not be tried that day, the deputy public defender being engaged in another case. Since it was apparently uncertain which judge would be trying it, the court denied the motion without prejudice, stating, not unreasonably, that the question whether defendant was competent to represent himself should be determined by the actual trial judge. Defendant then requested law library

privileges. This request was opposed by the deputy public defender.[2] During an ensuing discussion, defendant interrupted to state that the reason he asked "for pro per" was to "appeal" the ruling on the motion to suppress. The prosecutor pointed out that the ruling on the motion was reviewable on an appeal from a final judgment. Defendant then displayed some knowledge of procedure by stating that he was preparing a writ of prohibition.[3] In any event the request for law library privileges was denied. The trial was then, at the request of defense counsel, "trailed" on a day by day basis until the actual trial date, January 29. The record shows that on one of these occasions, January 25, defendant again moved the court to be allowed to represent himself.[4] His motion was again denied without prejudice.

When the matter finally went to trial defendant, without concurrence of the deputy public defender, stated that he wanted to make a motion to dismiss the information under section 995 of the Penal Code. He reiterated his desire to "prepare" his own case. He stated that he had filed a writ of prohibition "to stop all proceedings and to appeal that matter."[5] The prosecutor then suggested that it was time for the court to make a definitive ruling on defendant's right to represent himself. The court agreed and proceeded to determine defendant's competency to waive his right to counsel. The proceedings are copied in the footnote.[6] On the basis of the court's questioning

[2]At a later point in the proceedings the deputy stated: "It is the general position of our office that we oppose access to the law library when we are representing the client, but the Court certainly has a right to make such an order if the Court wishes to." We believe that this an entirely reasonable position for the public defender's office to take. It is intolerable for an attorney who is trying a serious case, to be constantly "quarterbacked" by a layman. "The legal profession knows no worse headache than the client who mistrusts his attorney. The lay litigant enters a temple of mysteries whose ceremonies are dark, complex and unfathomable." (*Daley* v. *County of Butte,* 227 Cal. App.2d 380, 392 [38 Cal.Rptr. 693].)

[3]That, of course, was a proper remedy. (Pen. Code, § 1538.5, subd. (i).)

[4]On January 24 he had submitted a petition for new counsel "appointed from the American Bar Association." On January 26, defendant, who on January 18 had stated that he was not "waiving any time," stated that he would "like to place [an] objection on the record [against] these proceedings."

[5]We have searched the files and records of this court and have found no evidence that any such petition was ever filed here.

[6]"THE COURT: . . . Have you ever represented yourself in a criminal proceeding before? THE DEFENDANT:Not in a Superior Court. THE COURT: Have you ever attended a law school? THE DEFENDANT: No, I haven't. THE COURT: Have you ever attended any kind of a college or university? THE DEFENDANT: I have had a little college, in junior college, that is. THE COURT: Junior college? THE DEFENDANT: Yes. THE COURT: Have you studied any law there? THE DEFENDANT: No, I haven't; history. THE COURT: In this information that has been filed in this case, it alleges violation of Section 11500 of the Health & Safety Code. It alleges that you wilfully and unlawfully and feloniously had possession of a narcotic, namely, hereoin [*sic*], on or about the 31st day of July, 1967. Do you understand the elements of this offense? THE DEFENDANT: Yes. THE COURT: What are they? THE DEFENDANT: The information, the charge, and the defense for both of them. THE COURT: What are the various

of the defendant it found that he was not competent to represent himself.[7] One matter worth noting is that during the discussion which follows the examination copied in footnote 6 and before the court's ruling, the deputy public defender said: "Obviously, if he is going to be qualified to represent himself, he is going to have to spend a lot of time in the law library." De-

---

pleas that are available to you? THE DEFENDANT: There is a 995; there is a demurrer; not guilty plea; a not guilty by reason of insanity; guilty by reason of insanity; and nolo contendere; not guilty. There is actually six, if I am not mistaken. I can't recall them at this time. THE COURT: What are the defenses that are available to you? THE DEFENDANT: Would you repeat that? THE COURT: I just asked what the pleas are that are available to you. What are the defenses that are available to you? THE DEFENDANT: Well, the information; the charge. Is that what you are trying to get at? THE COURT: Well, is that your understanding of the defenses that are available to you? THE DEFENDANT: No. I was thinking— THE COURT: What are the defenses? THE DEFENDANT: Well, the defenses for the information, first of all, would be whether they should be set aside for lack of evidence and things of that sort, or the charge upon which he is convicted of, amounting to the time which he has to do for it; and whether it has violations of certain constitutional rights; search and seizure, such as that, or wanted advice of constitutional rights or witnesses which have been hearsay evidence of sorts. THE COURT: Have you ever impaneled a jury in a case? THE DEFENDANT: Not particularly. THE COURT: Well, have you in general? THE DEFENDANT: I have started to, yes. THE COURT: What do you mean, you started to? THE DEFENDANT: I started to. At that time my relatives had acquired an attorney and he had walked in kind of late and I had started to proceed and we continued the matter and he took over from then on. THE COURT: Well, in impaneling a jury, how many challenges are you entitled to? THE DEFENDANT: Ten. THE COURT: And what are the grounds for challenge? THE DEFENDANT: Previous impanelment, the jury has been in a trial before or —or has relatives, police officers, which may be prejudicial to the defendant. That is all I can recall at this time. THE COURT: What are the penalties for the offense with which you are charged? THE DEFENDANT: To my understanding, for the first time I think it is five to life, ten to life, and fifteen to life, or it would be one to ten, or two to twenty. I am not sure of the others. THE COURT: Do you know what the corpus delicti is? THE DEFENDANT: The body. THE COURT: What is the corpus delicti of the offense with which you are charged? THE DEFENDANT: It would be heroin. THE COURT: Do you have any questions you would like to ask, Mr. District Attorney? MR. GERAGOS: I notice the defendant mentioned hearsay. I wonder if he knows what hearsay is. THE COURT: Yes. Can you tell us the definition of hearsay evidence? THE DEFENDANT: Well, it would be evidence which is related from one person to another and stated by another person, or it could be something with no substantial proof behind it. THE COURT: What are the exceptions to the hearsay rule? THE DEFENDANT: Opinions of experts. I can't recall, your Honor. THE COURT: Do you have any questions? MR. GERAGOS: The only thing, I wonder if after hearing himself now being examined, the defendant himself believes he is qualified to defend himself after his own demonstration here as to his lack of knowledge? THE COURT: Do you consider yourself competent— THE DEFENDANT: Yes, I do. THE COURT: —to represent yourself? . . ."

[7] "THE COURT: . . . The Court finds, Mr. Ochoa, that you are not competent to represent yourself in this case and that you do not have sufficient learning in law, criminal law particularly, or in proceedings that would enable you to properly represent yourself and the Court, therefore, denies your request and your motion to proceed in propria persona and hereafter all matters will be handled through your attorney. This is the law, and that is the rule of the Court."

fendant who was not at all shy about speaking up, did not challenge that statement.

Try as we might, we cannot distinguish the nature of the examination given by the court from that which we held inadequate in *People* v. *Addison*, 256 Cal.App.2d 18 [63 Cal.Rptr. 626]. Without further elaboration, we refer to our discussion in that case. When this matter first reached our calendar we invited argument that we review the rationale of *Addison*. Since then, however, the case has been followed in at least one reported decision, *People* v. *King*, 276 Cal.App.2d 781 [81 Cal.Rptr. 336], and in *People* v. *Floyd*, 1 Cal.3d 694, 702-704 [83 Cal.Rptr. 608, 464 P.2d 64], the Supreme Court went to some pains to distinguish *Addison*. We therefore think it inappropriate to reconsider that decision, particularly since, for reasons about to be stated, we feel that no reversible error was committed in this case.

*Addison* is, however, distinguishable in other respects. There the defendant, on the day of trial when the People were ready to proceed, wanted to dismiss the public defender, because the deputy who was handling his case was ill and a continuance was being requested by another deputy. To have permitted the defendant to continue as his own lawyer would not have disrupted the court's calendar in the least and it certainly would have accommodated the prosecution and its witnesses. Here, however, the situation is the exact opposite. Had defendant been permitted to represent himself, the case could not have proceeded to trial. The reason why defendant wanted to dismiss his attorney was that he and the deputy differed as to strategy. The deputy on several occasions expressed his view that nothing was to be gained by seeking a writ of prohibition before trial and that defendant's rights could be adequately protected by appellate review, should he be convicted.[8] If the trial court had permitted defendant to represent himself, then, instead of going to trial, it not only would have been faced with a motion under section 995 of the Penal Code, but with the inevitable delay attendant upon the disposition of a writ of prohibition by this court. (Pen. Code, § 1538.5 subd. (1).) Under these circumstances defendant's request posed a serious threat to the orderly disposition of the court's docket.[9] Even *People* v.

---

[8] In deciding to challenge the denial of a motion to suppress in a writ proceedings before trial, the defendant takes certain chances. If he goes to trial instead, it is always possible that the trial court will, in its discretion, permit him to renew the challenge to an allegedly illegal search and seizure and suppress the evidence. In many cases this will result in an irreversible acquittal, even if the trial court is in error. On the other-hand a writ proceeding conceivably may result in unfavorable law of the case by which a trial court will, of course, deem itself bound.

[9] In view of defendant's plans for the handling of his case, we do not discuss the fact that, perhaps, even if he had not expressed a desire to take a futile side trip to this

*Crovedi,* 65 Cal.2d 199, 208 [53 Cal.Rptr. 284, 417 P.2d 868], recognizes that an individual's desire to defend himself "in whatever manner he deems best" need not be given effect at every turn of the proceedings if it will result "in a disruption of the orderly processes of justice *unreasonable under the circumstances of the particular case.*" (Italics added.) (See also, *People v. Durham,* 70 Cal.2d 171, 191 [74 Cal.Rptr. 262, 449 P.2d 198].) Under the circumstances of this particular case we can find no abuse of discretion on the part of the trial court.

Our disposition of the last point makes it unnecessary to consider the alleged violation of section 1382 of the Penal Code. All continuances were the result of requests by defendant's counsel.

The order is affirmed.

Stephens, J., and Reppy, J., concurred.

---

court, he would not have been ready for trial and would have wanted some time in the law library.