[Crim. No. 17978. Second Dist., Div. Five. Apr. 20, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM ARTHUR JONES, Defendant and Appellant.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Kenneth C. Young, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—The only question on this appeal is whether it was error for the trial court to permit defendant to represent himself after the court, on an adequate record, had twice found that the defendant was unable to do so, where no further showing of the defendant's capacity was made, and where the only apparent reason for the new and different ruling was that the defendant threatened not to cooperate with the public defender.

Defendant was charged with indecent exposure. (Pen. Code, § 314, subd. 1.) Two prior convictions for the same offense were alleged. He pleaded not guilty and denied the priors. Before the trial date, November 13, 1969, the defendant had apparently made a motion to be permitted to represent himself in department 103. No ruling on that motion was made and the case was transferred to department 26 for trial. There he renewed the motion. The basic reason he gave for wanting to represent himself was that he was dissatisfied with the services of the public defender's office. A rather lengthy dialogue between court and defendant ensued. At one point it appeared that the reason for defendant's motion was not so much dissatisfaction with the representation by the public defender's office generally, but dislike for the particular deputy assigned to him. "I don't think we can stand each other, really." The deputy explained that no other deputy might be available for another month to six weeks. In response to the court's praise for the competency of the deputy, defendant conceded that he was not versed in the law "like [the deputy] is," but he just did not want him. Asked by the court how he would conduct the trial, defendant's only announced strategy was that he would take the witness stand and tell the jury the facts. He did not seem to appreciate that, unless he admitted the priors, the jury would learn about them whether he testified or not. He knew the charge against him "to a certain degree." Asked whether he knew how to request jury instructions he responded by informing the court that he would not mind having a public defender for "giving advice."

Of course, we do not know the defendant's demeanor. To the extent that we can perceive it by reading between the lines of the transcript, he may well have appeared extremely obtuse, almost as if under the influence of some drug. The court was amply justified in ruling after the portion of the proceedings heretofore summarized: "Well, I am going for your own benefit, Mr. Jones, to deny your request to represent yourself *because I just do not think that you can do it properly,* and I do not see anything that you can do for yourself that you cannot do with your attorney, and with your attorney you can do some things you cannot do for yourself. So, I will deny the request." (Italics added.) Defendant then announced that if

that was going to be the ruling he did not want to "have any part of it." He would just have to accept the consequences. There was further discussion between defendant and the court. Defendant's answers to the court's queries became more rambling and less responsive. When the conversation returned to the problem of how defendant was going to handle the priors,[1] he responded: "I would like to have legal counsel to inform me of a lot of these things, but this fellow here, I explained to Judge Hayden and everything like this because he ain't helping me any." After more discussion the following ensued:

"THE COURT: Well, *the Court has denied your request to dismiss him, and I am doing it for your own benefit.* Now, are you going to cooperate with him and try to do the best you can in presenting a defense? THE DEFENDANT: No. THE COURT: You are not? THE DEFENDANT: Because I talked it over with him, you know, to a certain degree, and I explained it to Judge Hayden and I figure the only thing I really could be would be sincere with myself, and I wouldn't be sincere with myself if I did something like that. THE COURT: And you think that you are able to present your own case; is that it? THE DEFENDANT: The only thing I do is tell the facts, and that's the only thing I figure I can do. THE COURT: You mean the facts about what happened on the 12th day of August? THE DEFENDANT: Right. Whatever the outcome is, I just figured I had three months to get ready for it. THE COURT: You realize you are only going to tell about what happened on the 12th day of August? We are not going to go into what happened before, and we are not going to go into what happened afterwards. I don't care what happened in the jail or the telephone calls. Do you understand that? Your answer was yes? THE DEFENDANT: Yes. THE COURT: Well, I guess under the circumstances, Mr. Garfinkel, that if he refuses to cooperate with you and still states he wants to represent himself we ought to let him do it." (Italics added.)

A little later, after an unreported discussion at the bench, the following took place: "The record will show that the Court is granting the motion

---

[1] Concerning the priors the court informed the defendant that "the only question . . . is were you convicted or were you not convicted?" Unless the court meant that procedurally the defense had waived its opportunity to raise a question concerning the constitutional validity of the priors (*People* v. *Coffey*, 67 Cal.2d 204, 215-218 [60 Cal.Rptr. 457, 430 P.2d 15]), that statement was manifestly either too broad or too sophisticated for a lay-person. Parenthetically, for whatever bearing it may have, we note that while defendant appreciated that his conviction could result in a prison sentence, he showed no awareness of the fact that the possible maximum was life imprisonment (Pen. Code, §§ 314, 671), nor was he told of it. Finally there was no mention at all of the possibility that the outcome of the proceedings could be a finding that defendant was a mentally disordered sex offender (Welf. & Inst. Code, § 6300 et seq.) which again, under certain circumstances, could result in confinement for life. (Welf. & Inst. Code, § 6326.)

*on the grounds that the defendant has stated he will refuse to cooperate with the public defender if the public defender is not dismissed,* and I am granting it on the further ground that the defendant has already been advised as to all his constitutional rights with reference to this case and on Mr. Jones' own statement that he feels that he can adequately represent himself and that he can better represent himself than he could with an attorney. Is that correct, Mr. Jones? THE DEFENDANT: True to a certain degree. THE COURT: Well, that is what you are telling the Court, isn't it? THE DEFENDANT: I didn't feel that I could do more for myself, to a certain degree, than this gentleman here because he is not giving me, you know,— THE COURT: If you want me to grant this motion, I want to make sure that you feel you can adequately represent yourself because I want you adequately represented here. THE DEFENDANT: Actually, I tell it this way: If my life was at stake and I would feel that I was losing, I wouldn't put it on him. Not the point that he don't have the qualification in the law because I know definitely that he has it, but I just don't feel—"

Then there was further discussion in which defendant again assured the court that he would not cooperate with the public defender. However, before the now discharged deputy was permitted to leave the courtroom, he was requested by the court to give defendant a short course in constitutional rights. This consumed about three pages of transcript, most of which were devoted to trial tactics, with particular reference on how to handle the priors. The deputy then left and after a short recess defendant did admit the previously denied priors. The trial then started. The People called four witnesses. There is no need to summarize their testimony. The court obviously had not changed its mind with respect to defendant's ability to represent himself. After the direct examination of each of the four witnesses the court, without inviting cross-examination by the defendant, extensively examined each witness further.[2] Later cross-examination by the defendant was spasmodic and appears largely irrelevant.[3]

[2]We need not try to decide whether the court's examinations helped or hurt the defense. If defendant was properly permitted to represent himself, the court did not abdicate its right to develop the facts as it deemed proper. No point with respect to any of the court's questions is raised on appeal.

[3]After the People had completed their case the following took place in front of the jury. "THE COURT: The record will show that the defendant and all of the jurors are present. Now, Mr. Jones, as the Court has previously advised you, you may call any witnesses you may have available as part of your defense, or you may testify yourself if you care to. You're not required to testify. Now, what is your decision? THE DEFENDANT: I would just have to go this way because I didn't have time to request witnesses. THE COURT: You have no witnesses? THE DEFENDANT: That's right. THE COURT: Do you wish to testify yourself, or do you wish to have the matter submitted to the jury without your testimony? THE DEFENDANT: Well, I will just rely on the jury, their verdict. THE COURT: May I have the defendant and the district attorney and the reporter up to the bench? . . ." Since the point is not raised and not necessary to the

## DISCUSSION

■ There can be no question that, had the court refused to relieve the public defender, its action would have been upheld on appeal. (*People* v. *Floyd,* 1 Cal.3d 694, 702-704 [83 Cal.Rptr. 608, 464 P.2d 64].) Whatever may be the precise test by which we measure the capacity of a person accused of crime to waive his right to counsel (*People* v. *Floyd, supra; People* v. *Addison,* 256 Cal.App.2d 18, 24-25 [63 Cal.Rptr. 626]) the record clearly supports the court's initial finding that defendant lacked such capacity.[4] Certainly it does not inescapably appear that defendant displayed an "intelligent conception of the consequences" of proceeding without counsel. (*People* v. *Thomas,* 58 Cal.2d 121, 131-132 [23 Cal. Rptr. 161, 373 P.2d 97]; *In re Connor,* 16 Cal.2d 701, 709 [108 P.2d 10]; *People* v. *Addison,* 256 Cal.App.2d 18, 24 [63 Cal.Rptr. 626].) He seemed dull witted, only vaguely aware of the charge, unaware of the consequences of a conviction, totally without any knowledge of rudimentary procedure and generally resigned to his fate, not because of admitted guilt, but rather for the reason that he realized that without counsel he had no chance.[5] The record falls far short of depicting him as the kind of intelligent defendant who, with full awareness of all the dangers and pitfalls attendant upon self-representation, nevertheless, desires "to be the master of his own fate." (*People* v. *Addison, supra,* at pp. 24-25.)

■ The question then becomes whether the trial court, having properly determined that the public defender should not be relieved because of defendant's incompetence, could change its ruling without any further showing of competence, simply because the defendant irrationally and obstinately refused to abide by the ruling and announced his intended refusal to cooperate. We do not believe so.

Almost on all fours with this case is *People* v. *Robles,* 2 Cal.3d 205, 217-219 [85 Cal.Rptr. 166, 466 P.2d 710]. *Robles* was a capital case.

disposition of this appeal, we need not decide whether these proceedings violated the defendant's rights (*Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]), or whether, if so, the error was prejudicial. (*Chapman* v. *California,* 386 U.S. 18, 21-24 [17 L.Ed.2d 705, 708-711, 87 S.Ct. 824].)

[4]This is so, even if, on the identical record, we might have had to support a finding to the contrary. This court does not have the benefit of the confrontation enjoyed by the trial court. As we have pointed out the demeanor evidence, observed by the latter, can only be gleaned by us from a between-the-lines perusal of the transcript. ". . . The determination of the trial judge as to the defendant's competence to waive counsel involves an exercise of discretion by the trial judge which in the absence of an abuse of discretion will not be disturbed on appeal. . . ." (*People* v. *Robles,* 2 Cal.3d 205 at p. 218 [85 Cal.Rptr. 166, 466 P.2d 710].)

[5]The three-page course in criminal procedure given defendant by his former counsel after the ruling relieving him, while a valiant effort, hardly made up for defendant's glaring incompetence.

During the guilt phase the defendant moved to discharge his attorneys. After extensive inquiries the trial court found him incapable of making a valid waiver of his right to counsel. He was found guilty. He again moved to discharge his attorney and was permitted to do so. His former attorneys agreed to act as his advisors during the penalty phase. The judgment was reversed insofar as it relates to penalty.

In holding that the court committed error, the Supreme Court emphasized that, acting within its discretion, the trial court had determined Robles' incompetence. His rather bizarre conduct during the guilt trial supported that finding retroactively. It was thus error to relieve counsel.

To be sure *Robles* is a somewhat stronger case, both with respect to the defendant's demonstrated incompetence and, of course, the seriousness of the charge.[6] Yet, on principle, it is indistinguishable: if the trial court, on a record which supports the finding, determines that a defendant is incapable of representing himself, it is error of constitutional dimensions to permit him later to do so, at least without a further finding, also supported by the record, that he is capable. Such further finding could be based upon a reevaluation of facts previously brought to the attention of the court or fresh facts developed since the former determination, or both. In the case at bar there was no such finding.

It seems, of course, extremely unjust to the People who have a serious stake in this proceeding, that this case must be reversed because yet another defendant has managed to cause a trial court to commit error in connection with his assertion of a right to self-representation.[7] It is, of course, plain that the error was due to the court's bending over backwards to deal with defendant charitably and thinking, not unreasonably, that it would be better if, in a case that promised to be rather simple, he were permitted to represent himself with generous assistance from the bench, than if the defense were conducted by an attorney who received no cooperation from this client. The Sixth Amendment, however, guarantees representation by counsel, not by the court.

The course which the court should have followed, even if seemingly harsher, was prescribed by case law. In *In re Luna,* 257 Cal.App.2d 754

---

[6]In a sense *Robles* is weaker because of the continued presence of his attorneys as assistants.

[7]Our own feelings concerning the games which present law permits defendants to play with trial courts by demanding the "right" to represent themselves were expressed in *People* v. *Weston,* 9 Cal.App.3d 330, 334-335 [87 Cal.Rptr. 922] and *People* v. *Addison,* 256 Cal.App.2d 18, 23-24 [63 Cal.Rptr. 626]. We should, however, say that as far as the present defendant is concerned, our reading of the record convinces us that far from being a cunning criminal who maneuvered the trial court into error, he merely stumbled into the same result.

[65 Cal.Rptr. 121], defendant and appointed counsel had a falling out on tactics. The court refused to appoint another attorney as requested by defendant. His counsel was relieved and defendant proceeded alone. There was no finding concerning his capacity to do so. This court answered the argument that defendant had waived his right to counsel by his conduct as follows:

"[T]he deputy public defender had asked to be relieved and petitioner had concurred in the request. If this joint request had had the effect of forcing the court to relieve the public defender then it would follow that where it appears later that the defendant cannot make an intelligent waiver of his right to counsel, the court must either go on appointing until it finds one who will proceed as defendant wants him to or it must proceed unconstitutionally. That the former course of action—successive appointments—is not required is well established. (*People* v. *Norman,* 252 Cal. App.2d 381, 399, 401 [60 Cal.Rptr. 609].) The latter course is unthinkable.

"The solution to the dilemma is very simply that the court was under no obligation to relieve the public defender simply because he and petitioner disagreed on strategy. (*People* v. *Stewart,* 240 Cal.App.2d 1, 5 [50 Cal.Rptr. 26]; *People* v. *Jackson,* 186 Cal.App.2d 307, 315-316 [8 Cal.Rptr. 849].)

█ " '[T]here is no constitutional right to an attorney who will conduct the defense of the case in accordance with an indigent defendant's whims.' (*People* v. *Nailor,* 240 Cal.App.2d 489, 494 [49 Cal.Rptr. 616]; see also *People* v. *Mattson,* 51 Cal.2d 777, 793 [336 P.2d 937]; *In re Atchley,* 48 Cal.2d 408, 418-419 [310 P.2d 15].)" (*In re Luna,* 257 Cal.App.2d at p. 757.)

Similarly in the case at bar, the court should not have been swayed by defendant's threat not to cooperate. Actual failure to cooperate might, of course, have raised a question concerning defendant's present sanity.[8] Absent that possibility, however, the court simply would not have been concerned and could, with a clear conscience, have let defendant lie in the bed he had made for himself.

It may seem paradoxical that the law should be overprotective when a defendant wants to commit legal suicide by representing himself and turn its back when he achieves the same effect by not cooperating with his

---

[8]In *People* v. *Robles, supra,* 2 Cal.3d at page 215 the court held that a defendant must be permitted to testify, even against counsel's advice. In a footnote it indicated, however, that such persistence on defendant's part might raise a question concerning his mental ability to stand trial.

attorney. The difference stems from the fact that the Sixth Amendment speaks specifically of a right to counsel, but not generally of a right to continuous assistance from the bench to save the defendant from his own stubbornness.

The judgment is reversed.

Stephens, J., and Reppy, J., concurred.